PELEG T. JONES *vs.* IVORY A. HODGKINS.

*Sale by agent—effect of.*

When a commission merchant sells and delivers property, intrusted to him for sale, before notice of the revocation of his authority, he is not liable in trover for such sale.

The *bona fide* purchaser under such sale and delivery acquires thereby a good title as against a prior purchaser from the consignor without delivery.

ON EXCEPTIONS.

TROVER. The facts are sufficiently stated in the opinion.

The presiding judge instructed the jury, that if the defendant was employed by McLaine as a commission merchant to sell all of his logs, and if the defendant run the logs which remained in the boom until April, 1871, and sold them to Walker before the defendant had notice or knowledge of the sale of them by McLaine to the plaintiff, it was a defence to this action, notwithstanding McLaine had sold and conveyed the logs to the plaintiff before the defendant had taken the logs or sold them to Walker.

*Wm. H. McCrillis,* for plaintiff, in support of the exceptions.

*Brown* and *Simpson,* for defendant.

APPLETON, C. J. The defendant is a commission merchant. One McLaine had a quantity of logs in the Penobscot boom, in the spring of 1870, which he employed the defendant to sell on commission. The defendant sold the logs which came through the boom that year to James Walker. A portion of the logs remaining in the boom through the winter were, in the following April, run therefrom and sold and delivered by the defendant to said Walker, by whom they were manufactured and the lumber sold.

It appeared in evidence that in March, 1871, McLaine had sold the logs which remained in the boom to the plaintiff, but there was no evidence to show a delivery to him or that he had taken any actual possession of the same. Nor was it even alleged that such was the case. The jury found that the defendant had no knowledge of the sale from McLaine to the plaintiff until after the sale and delivery of the logs remaining over to Walker. The plaintiff proved a demand and refusal and then commenced this action of trover. Is it maintainable?

At the time of the demand made upon the defendant he had none of the logs in controversy in his possession or under his control. They had long before been sold and manufactured. The

defendant could not deliver what he had not, nor what was in the possession of others. Demand and refusal are evidence of conversion when the person upon whom the demand is made has the power to deliver the articles demanded, but when he has neither constructive nor actual possession and no right to or interest in the property and could not comply, a demand and refusal are not proof of conversion. *Davis* v. *Buffum*, 51 Maine, 160. The demand and refusal, under the facts proved, not being sufficient to support the action, there must be other proof of conversion to enable the plaintiff to maintain it. Indeed, no demand was necessary, if the defendant was guilty of a tort in selling. Was there any conversion of the plaintiff's logs prior to the demand? For if there was, his case would then be made out.

Trover is an action of tort. The conversion, which constitutes the gist of the action, is a tortious act. The action is not maintainable without proof of a tort on the part of the defendant. What tort has he committed? What wrong has he done?

The defendant received the logs in 1870 from the owner to sell for him at a stipulated commission. They were under his care and control. They were in his constructive or actual possession. It was his duty to make sale at the first good opportunity. If, having a good opportunity to sell, he neglected or omitted selling, he would be liable to his principal for the loss arising from such neglect or omission. He was bound by the contract between him and his principal not to cease in his efforts to make a judicious sale until the logs he was employed to sell were either sold or notice was given him that his authority was revoked. After accepting an agency he could not renounce it at pleasure without notice or good cause, and if he should, he would be liable to his principal for any loss occasioned thereby.

If, then, he sold, would his sale pass a good title to the purchaser? He had sold the logs which came through the boom in 1870 to James Walker, who thereby acquired a legal title to them. Walker knew the defendant to be a commission merchant. He purchased in good faith of one having control of the logs and re-

ceived a delivery of them. Suppose a part had been due for the logs sold the year before, a payment to the defendant by one having no notice of the revocation, even though the agent had such notice, would have been protected. But it matters not whether one buys of or pays to a commission merchant, the purchase and the payment are alike valid, if the person purchasing of or paying to the commission merchant is ignorant of the revocation of his authority to sell or receive payment.

The law on this subject seems unquestioned. "It is admitted," observes Mellen, C. J., "in *Harper* v. *Little*, 2 Greenl. 18, that a revocation of a power not coupled with an interest will not defeat and render void those acts which are done in pursuance of it and prior to notice of such revocation being given to the attorney. Authorities are clear and direct on this point." To the same effect is the law as laid down by Mr. Justice Story in his work on agency, § 470. As to the agent, the revocation "takes effect from the time when the revocation is made known to him; and as to third persons, when it is made known to them, and not before. Until, therefore, the revocation is so made known it is inoperative. If known to the agent, as against his principal, his rights are gone; but as to third persons, who are ignorant of the revocation, his acts bind both himself and his principal."

If, then, the defendant had authority to pass the title to Walker, no revocation of authority being known, is he liable as a tort feasor for doing precisely that which he was employed to do,—that which he had contracted to do,—that which if he neglected doing he would, so far as he knew, be liable in damages for not doing? If the sale passed the title, as it undoubtedly did, it was because the defendant had an authority to sell, which was unrevoked, or if revoked, no notice of the revocation had been given. Until notice of the revocation was given it was the bounden duty of the defendant to proceed in the performance of his contract with his consignor.

Undoubtedly, a sale of property in the hands of a commission merchant employed to sell such property is a revocation,—is an act

revoking the authority given. But as long as it remains unknown the commission merchant is not bound by it. He cannot regard it. The property still remains in his hands and his obligations to sell remain in full force.

In the case at bar the logs were under the control of the defendant precisely as they had been the previous year. He received them from the boom and sold and delivered them to Walker before, as the jury have found, he knew of the sale to the plaintiff. The sale to the plaintiff by McLaine was made at a distance from the logs and he had no delivery of them. The logs, then, were subject to any lien which the defendant might have for advances or to any contract he might make in reference to them until notice should be given him that his authority over them was at an end. " The contract of mandate," observes Mr. Justice Story, in his work on Bailments, § 207, " may also cease by a revocation of the authority, either by operation of law or by the act of the mandator. It ceases by operation of law when the power of the mandator ceases over the subject-matter. . . If he sells the property it ceases upon the sale if it is made known to the mandatary." These views are fully affirmed in an elaborate opinion of Sutliff, J., in *Ish* v. *Crane*, 8 Ohio, 520.

The defendant, having done only what he contracted to do and never having been notified of any revocation of his authority, is not to be held liable in tort for the performance in good faith of his contracts.                    *Exceptions overruled.*

CUTTING, KENT, DICKERSON, and DANFORTH, JJ., concurred.

WALTON, BARROWS, and TAPLEY, JJ., dissented.

TAPLEY, J., dissenting. One McLaine being the owner of certain logs, then in a boom, sold and conveyed them to the plaintiff in March, 1871. The defendant, being employed by McLaine as commission merchant to sell all his logs, did undertake to sell these logs in April following, not knowing McLaine had before sold them, and in pursuance of his contract run them out of the

boom and delivered them to one Walker. The defendant having done this the plaintiff demanded the logs of him, and they not being delivered he brought this action. It will be noticed the controversy arises between Jones, the purchaser of the owner, and an agent of the owner, and not between Jones, as purchaser, and Walker, as purchaser.

As between Jones and McLaine's agent where was the title? Where was the title from March to April? The instruction proceeds upon the ground and theory that the owner had sold and conveyed the logs to the plaintiff in March. These terms are broad enough to warrant the conclusion that the title had passed from McLaine to Jones, and that the logs actually belonged to Jones when the defendant seized them.

This being the case the defendant, in April, seized certain logs that the plaintiff had owned a month. Now, what is his justification? It is simply that he supposed they belonged to McLaine, and having a general authority to sell all his logs he supposed he was authorized to sell these. Does this erroneous supposition make any difference so far as title is concerned? It is not denied that had the defendant known of the sale to the plaintiff he would have been liable, and we think it quite clear he would be because he would have been intermeddling with property he knew belonged neither to himself nor his principal. It is very apparent that his knowledge or want of knowledge in nowise affected the title from March to April. We are therefore brought to the question whether trover can be maintained against one who sells another property, believing he has a right so to do, when in fact he has no such right.

We know of no rule of law that will excuse a man from liability under such circumstances. His ignorance may be purely his own fault or that of another. But this cannot affect the rights of the owner. Every man assuming control of property must see to it he has a legal right so to do, and if he has no such right he must respond in damages to the innocent party.

Whether that which took place between McLaine and Jones

operated as a sale and conveyance of the logs to the plaintiff we do not decide. The instruction given assumes that it did, and for the purpose of this discussion we must treat it as if it did, and so treating it we think the defendant should have responded on demand, and not doing so is liable in this action.

WALTON and BARROWS, JJ., concurred in this opinion.