# City Council of Montgomery *v.* Montgomery Water Works Company.

*Action by Water-Works Company, against Municipal Corporation, for Breach of Contract.*

1. *Distinction between express and implied contracts.*—Express and implied contracts are alike founded on the actual agreement of the parties, and the only distinction between them lies in the mode of proof.

2. *Contract with corporation for supplying water for use against fire.* Plaintiff having undertaken, by special contract, to supply defendant, a municipal corporation, through fire-plugs, or hydrants, with water for use in the extinguishment of fires, for which defendant agreed to pay a specified price per year, in monthly installments, for each hydrant; a recovery may be had for the agreed price, whether any water was actually used by the defendant or not, if plaintiff kept on hand water of suitable quality, and in quantity sufficient for the prescribed uses.

2. *Same ; use of water after termination of contract.*—If the defendant continued, after the termination of such special contract, to use the water in the same manner, and for the same purposes as before, without giving notice of an intention not to submit to the same terms and condi-

tions, the law would imply a promise to pay the same price fixed by the special contract; and a resolution adopted by the defendant, a copy of which was served on the plaintiff, neither admitting nor denying the special contract, but objecting to the quality and quantity of the water furnished, and declaring that nothing would be paid for the water used until these defects were remedied, does not rebut this implication, when it appears that the defendant continued to use the water as before.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by the Montgomery Water Works Company, a private corporation, against the "City Council of Montgomery," a municipal corporation; and was commenced on the 19th July, 1884. The complaint contained the common count, claiming $700 as due by account on the 1st July, 1884, "for water furnished by plaintiff to supply the fire-plugs in the city of Montgomery during the month of June, 1884;" and a special count as follows: "Plaintiff claims of defendant $700, due by contract on the 1st July, 1884, with interest thereon; and plaintiff avers that on, to-wit, the first day of January, 1884, defendant agreed to pay plaintiff a large sum, to-wit, $7,500, for supplying a large number, to-wit, one hundred fire-plugs, owned by the defendant, with water for extinguishing fires in the city of Montgomery during the year 1884; said sum to be paid in monthly installments, to-wit, $625, on the last day of each month during said year; and defendant paid several installments on, to-wit, the last day in January, February, March, and April, and plaintiff continued to supply said fire-plugs with water for extinguishing fires in said city, during the month of June, in the year 1884; and the water so furnished and supplied by said plaintiff was received by said defendant, and was held in readiness for use, and was used by said defendant, and under its direction, for extinguishing fires in said city; yet the said defendant wholly failed and refused to pay the installment due as aforesaid on, to-wit, the first day of July, 1884, to-wit, the sum of $625, for water furnished and supplied as aforesaid during said month of June, 1884." The defendant pleaded—1st, "that it did not undertake or promise in manner or form as plaintiff hath alleged against it;" 2d, "that it doth not owe the said sums above demanded, or any part thereof;" and issue was joined on each of these pleas.

"On the trial," as the bill of exceptions states, "there was evidence on the part of the plaintiff showing that plaintiff owned water-works in the city of Montgomery, and had been furnishing water to defendant, for fire purposes, through 97 hydrants up to the 1st day of June, and afterwards 98, belonging to defendant, but connected with plaintiff's water-pipes; that this water had been furnished and paid for, at the rate of $75 *per annum* for each hydrant, in monthly installments of

$6.25 each, and the payments regularly made on the first day of each month, for the preceding month, on bills rendered, up to the 1st May, 1884; that plaintiff, at the end of each month, presented a bill to defendant for the fire-hydrants, at $6.25 per month for each hydrant which had been accepted by the defendant, and the bills were paid; that this had been done regularly each month, for eight or ten years, prior to the 1st June, 1884; that the bill for May, 1884, had been presented as usual, and the defendant failed to pay it; that no fire-hydrant had ever been paid for by the defendant until the same had been tested by the defendant, and found to be sufficiently supplied with water for fire purposes; that the supply of water had been the same, and the use of it the same in all respects, during the said month of May, and subsequently, as before that time; that no notice was ever given by defendant to plaintiff that said defendant would not pay for the hydrants accepted as aforesaid, except the notice in writing hereinafter mentioned; that defendant had not paid anything on account of water so furnished to fire-plugs for fire purposes, since the payment for the month of April, but had been supplied by plaintiff with water for other purposes, and had paid for such water regularly as other private consumers, the amount so used and paid for being about $30 per month.    And here the plaintiff closed.

"There was evidence on the part of the defendant tending to show that the water furnished to the hydrants by plaintiff, prior to May, 1884, had been furnished and paid for under a contract between the parties; that in May, 1884, the defendant passed a resolution, a copy of which was served on the plaintiff," and which was in these words: "*Whereas* the Montgomery Water Works claim to have a contract with the City Council of Montgomery, to supply the city with water for certain purposes; now, without admitting the validity of any such alleged contract, *be it resolved* by the City Council of Montgomery, that the City Council refuse any longer to pay the Montgomery Water Works for its water, until that company, in the judgment of this council, furnish the city with a sufficiency of water, both in quantity and quality, to supply the water-plugs now located, or which may be hereafter located in the city, with good water; and that the mayor be authorized to serve the Montgomery Water Works with a copy of this resolution." "There was evidence, also, tending to show that the city of Montgomery contained about 18,000 or 20,000 inhabitants; that only about two-thirds or three-fourths of the city was furnished or supplied with fire-hydrants; that the average consumption of water for fire purposes, when supplied through hydrants, in cities in the United States, was not greater than three gallons per day for each inhabitant; that the price charged for

[City Council of Montgomery v. Montgomery Water Works Co.]

water by plaintiff, when furnished to consumers, taking from six to ten thousand gallons daily, was fifteen cents per thousand gallons; and that the reasonable value of the water which would, on an average, be used by a city the size of Montgomery, from hydrants, for the purposes for which they were furnished, and for the uses for which water from them was drawn, during the period of use sued for, would not have been greater than $270, if the whole city had been served with hydrants; and there was no evidence as to the actual amount of water used from said hydrants, during the period covered by this suit. The defendant introduced, also, evidence tending to show that some fifteen or twenty of the hydrants included in the number which the defendant had been paying for up to the 1st May, 1884, were not sufficiently supplied with water for fire purposes; that the quality of the water was often not good, being muddy and containing sand and gravel, which injured the fire-engines. The witness who testified as to this deficiency of quality and quantity, further testified that he discovered this since January, 1884, when he was appointed to an office in the fire-department which made it his duty to examine and test the fire-plugs; and that he made report of these matters to the defendant, in January, and each month subsequently. There was evidence, also, tending to show that some sixty or seventy of the fire-plugs, for supplying which with water for fire purposes this suit was brought, were connected with the water-mains by three-inch pipes, and that a four-inch pipe is the least that would supply with water a fire-engine, such as those of the defendant; though the plaintiff's evidence tended to show that all of said hydrants were tested and accepted by the defendants before they were ever received and paid for. The evidence showed that there was no notice on the part of the defendant, to the plaintiff, not to supply the fire-hydrants with water, or any other notice than said resolution above named; and there was no evidence of any corporate act on the part of said defendant, after said resolution, in reference to the furnishing of water by plaintiff to said hydrants, or the payment therefor by the defendant; but there was evidence that the defendant paid the drivers of the fire-engines, and fed the horses, but that the fire-companies were voluntary associations, and elected their own officers.

"During the examination of one Baldwin, who was the superintendent of the defendant's water-works, plaintiff asked him, 'if there was any relation between the water actually consumed and the price charged for furnishing hydrants with water for fire protection.' The defendant objected to this question, on the ground that it called for the opinion of the witness on a matter which involved a scientific inquiry, as to which the

witness was not shown to be qualified to give an opinion; he having previously stated that he had no scientific education, and was not an expert. The court overruled the objection, and allowed the witness to answer the question; to which the defendant excepted. The witness answered, that there was no connection between the two.

" The foregoing was all the evidence in the case; and thereupon the court charged the jury, at the instance of the plaintiff, that if they believed the evidence, they must find a verdict for the plaintiff, for $627.46, with interest from the first day of July, 1884." The defendant excepted to this charge, and now assigns it as error, with the admission of the evidence objected to.

GUNTER & BLAKEY, for the appellant.—(1.) There is no controversy here as to the water furnished, at a stipulated price, under an express contract between the parties, while that contract was in force; but the contest is as to the measure of the plaintiff's recovery after the abrogation of that contract—after non-performance of its stipulations by one party, and an express refusal and notice by the other not to be bound by its terms. Every contract, express or implied, rests upon the *consensus mentium* of the parties. While the express contract was in force, plaintiff was entitled to recover the stipulated price, without regard to the quantity of water actually furnished and used; and after the expiration of that contract, the relations between the parties being unchanged, it may be that the law would raise an implied promise to pay at the same price. But no such implication can arise as to water voluntarily furnished by plaintiff after defendant's refusal to pay at that rate for the month of May, and notice that it would pay nothing in future unless the defects complained of were removed.—*Crommelin v. Theiss*, 31 Ala. 418. For water furnished and used under these changed relations, a recovery can only be had under a *quantum valebat*. It must be remembered, too, that the defendant is a municipal corporation, and not only has the right, but it is its duty, as the custodian of the public good, to take and use the water at any time when necessary for the extinguishment of fires, subject only to the obligation of making just compensation.—2 Dill. Mun. Corp., § 756, notes. If an express notice and refusal to pay for one month does not change the course of dealing between the parties, how long must such refusal be persisted in? The stipulated price under the former contract was only evidence for the consideration of the jury, in connection with the evidence offered by the defendant as to the quantity and value of the water actually furnished and used; and the affirmative charge of the court was erroneous. (2.) The price or value of water for protection

[City Council of Montgomery v. Montgomery Water Works Co.]

against fire in cities, as in the analogous case of insurance, is governed by the *average* amount actually used by cities for such purposes per each inhabitant; and no other rule can be laid down. Yet the court allowed plaintiff's witness to testify that there was no relation between the two.

TROY & TOMPKINS, *contra.*—The proof showed that plaintiff had been furnishing water to defendant, for fire protection, for a number of years, under a contract entered into between them; but none of the terms of the contract were proved, except the agreed price per month for each hydrant. Notwithstanding the defendant's refusal to pay for the month of May, and resolution not to pay anything in future unless certain alleged defects were remedied, the water was furnished and used as before; and there was no proof that the water was different, in quantity or quality, from that for which the defendant had paid during the whole period. If there was a contract between the parties, and the plaintiff failed to comply with any of its stipulations, that was matter of defense, to be affirmatively shown by the defendant; and in the absence of such evidence, the plaintiff was entitled to recover the price fixed by their former dealings.—2 Greenl. Ev. § 136; *Merrill v. Railroad Co.*, 16 Wendell, 588; *Sewing Machine Co. v. Bulkley*, 48 Illinois, 189; 1 E. D. Smith, 618; *Whilden & Sons v. P. & M. Bank*, 64 Ala. 1; *McKenzie v. Stevens*, 19 Ala. 691. The testimony of Baldwin was directly to the point involved—that the price paid by the defendant had no reference to the quantity of water used. If his evidence was improperly admitted, it was error without injury.—*Leonard v. Storrs*, 31 Ala. 488; *Donley v. Camp*, 22 Ala. 659; 36 Ala. 39.

SOMERVILLE, J.—The evidence discloses, without conflict, that the plaintiff had been furnishing the defendant, for eight or ten years, with water "for fire purposes," through a large number of hydrants; this water being used by the city authorities for the purpose of extinguishing fires, whenever required. No account was kept of the quantity of water consumed for this purpose; but the defendant had paid for this privilege, regularly, the annual sum of seventy-five dollars per hydrant, in monthly installments of six dollars and a quarter per hydrant. This sum had been paid on the first of each month, on bills rendered for the preceding month, based upon the foregoing rates; and these payments had been continued up to the first of May, 1884. The bill for May, being presented on the first of the succeeding month, was refused payment by the defendant, and so with the bill for June; and for the amount of this bill the present action was brought. It

is further made to appear, that all water used by the city, for other purposes than that of extinguishing fires, was paid for on a *quantum valebat*, at prices charged private consumers. The court gave the general charge, at the request of the plaintiff, on this state of facts; probably considering that the law implied a contract from the facts, and that this implied promise to pay was not abrogated or affected in any manner by a certain resolution of the city council of Montgomery, passed in the month of May, to which we shall advert in the consideration of the questions before us.

Nothing is plainer than the proposition, that the distinction between express contracts and implied contracts lies, not in the nature of the undertaking, but in the mode of proof. As observed by this court in *Keel v. Larkin*, 72 Ala. 493, 502, " both express and implied contracts are founded upon the actual agreement of the parties, the only distinction between them being as to the mode of proof, or evidence by which they are substantiated."—2 Greenl. Ev. § 102. The evidence, in the present case, tended to show that the water furnished the hydrants, prior to the month of May, had been furnished and paid for under a contract between the parties. The terms of this contract not being specially set out, we interpret the bill of exceptions to mean, that they were in harmony with the action of the contracting parties above indicated. The plaintiff declares, both upon a special contract, and upon the common count for water furnished to supply the fire-plugs, or hydrants.

If there was a special agreement on defendant's part to pay a stipulated sum to the plaintiff, for the privilege of using water to extinguish fires, and defendant furnished the requisite amount, of suitable quality for the purposes intended, and this agreement continued in force and unrescinded, there can be no doubt of plaintiff's right to recover under the first count, whether any water was actually consumed or not. And if the special agreement had terminated, and the defendant continued to use the water as before, in the same manner, and for the same purposes, without any notice of intention not to submit to the same terms and conditions, the law would raise an implied promise to pay the rate of recompense fixed by the former contract. The case is not one of a *quantum valebat*. The contract shown by the evidence, whether express or implied, is not one to pay for the quantity of water actually consumed or taken from the hydrants, but an agreement to pay a stipulated sum each month, for the right or privilege of using as much as they needed. The obligation of the plaintiff was, to always have the requisite amount of water in their works, ready for use. If they had fully performed this duty, a recovery could as well

be had under the common count, as under a special agreement; the presumption being, that the price to be charged would be the contract price.—2 Greenl. Ev. (14th ed.) §§ 104, 136, note 4; *Grover & Baker Sewing Machine Co. v. Bulkley*, 48 Ill. 180; *Wolffe v. Wolffe*, 69 Ala. 540 (44 American Rep. 526).

It is our opinion, that the facts in evidence presumptively established an agreement, whether express or implied it is immaterial, by which the jury, if they believed it, were required to infer a promise by the defendant to pay the plaintiff the sum of six dollars and a quarter for the privilege of using water from the fire-plugs, or hydrants, furnished by them to the city council of Montgomery.

This implication is not rebutted by the resolution of the city council, passed in the month of May, 1884. This resolution, while it does not admit, pointedly fails to deny, the existence of the alleged contract. The objection raised goes rather to the good quality and sufficiency in quantity of the water furnished; and the declaration is, that nothing will be paid for the use of the water until these alleged defects are remedied. There was no notice to the plaintiff not to continue to supply the fire-hydrants with the customary supply of water, and the use of the water by the defendant continued during the months of May and June precisely as before. It does not appear that the quality or quantity of the water had in any manner depreciated, but that it continued the same. If such a defense had been interposed, the burden of proving it would have devolved upon the defendant. Under this state of facts, the continued enjoyment of the benefits of the existing contract must be presumed to be accompanied with its attendant burdens. The defendant knew that the plaintiffs had given no consent to reduce the price of the privilege, and the continuation of the use of the hydrants was their own voluntary act. In such a case, the law presumes an implied agreement to pay the contract price.

We find no error in the rulings of the court on the evidence; and in our judgment, the general charge to find for the plaintiff was properly given.

STONE, C. J.—The resolution of the city council of Montgomery, a copy of which was served on the Montgomery Water Works Company, was in no sense a repudiation of the price charged, and previously paid for the use of the fire-plugs. It was a determination to pay *nothing* to the company for its water, "until that company, in the judgment of the council, furnish the city with a sufficiency of water, both in quantity and quality, to supply the water-plugs now located in the city,

with good water." The resolution being to pay nothing, its most natural interpretation is, that unless the Water Works raised the supply of water up to the standard which the council termed good, both in quantity and quality, then the city would cease to use the fire-plugs; for it can not be supposed the intention was to use the water, and yet pay nothing for it, because of its inferiority. The rule must be applied, observed in kindred questions, that a specification of particular objections, is a waiver of every thing not expressed. *Inclusio unius est exclusio alterius.* It is like the objection to testimony, or to the preliminary proofs in the case of insured property destroyed by fire, or to the sufficiency of a tender, on specified grounds. In either such case, a specified objection is a waiver of all other objections that might be made, and concedes there is in fact no objection, other than that which is specified.—1 Brick Dig. 887, § 1194; *Firemen's Ins. Co. v. Crandall*, 33 Ala. 9; 2 Greenl. Ev. § 601. The city council, by the course it pursued, must be held to have precluded itself from raising the question of the price it would pay for the use of the fire-plugs, if it used them.

The witness Baldwin, against defendant's objection, was permitted to testify that there was "no relation between the water actually consumed and the price charged for furnishing hydrants with water for fire protection." The present action claimed a recovery, not for any extra water consumed, but for supplying water to a given number of fire-plugs, or hydrants, for fire protection, or for use. Supplying water to hydrants, for use in case of fires, denotes, *ex vi terminorum*, that the Water Works Company bound itself to keep the hydrants supplied with water for use, when needed, and that it can have no relation to the quantity of water that may be needed or used. The testimony, tending as it did to prove only what the law, in its absence, would have inferred from the very terms of the contract, it is immaterial whether the testimony was legal or illegal. It could work no possible injury. Let it be understood, however, that what I have said applies only to this suit, where the only claim made is for so much per hydrant, for keeping them supplied with water for fire purposes. Should there be a claim asserted for water used, not in extinguishing fires, but for some other purposes, my remarks must be construed as deciding nothing on that question.

I fully concur in the conclusions reached by my brother SOMERVILLE.

CLOPTON, J., not sitting.