JOHN HANCOCK MUTUAL LIFE INSURANCE CO.
*v.* PAPPAGEORGU

[No. 16,048.   Filed January 4, 1940.]

328

*Richardson & Greenwald,* for appellant.

*Oscar B. Thiel,* and *Frank A. Rondinelli,* for appellee.

DUDINE, J.—This is an action instituted by appellee, Fannie Pappageorgu, against appellant, John Hancock Mutual Life Insurance Company, upon a group insurance policy issued by appellant.

None of the pleadings are challenged upon appeal. It is not necessary for the purpose of this opinion that the pleadings be described herein. The issues having been formed by proper pleadings the cause was submitted to a jury for trial and the jury returned a verdict for the plaintiff (appellee here) that she recover $1131.81 from appellant insurance company. Judgment was entered in accordance with the verdict.

The sole error assigned and relied upon for reversal is contended error in overruling a motion for new trial filed by appellant. One of the causes for new trial assigned in the motion therefore is "the verdict is contrary to law". Upon appeal appellant presents, in support of said assigned cause for new trial, the contention that the evidence fails to prove that the policy of insurance in the instant case was in force at the time of the death of the insured.

The evidence indisputably shows that appellee, Fannie Pappageorgu was the widow of Nick Pappageorgu; that she was named as the beneficiary in a certificate of life insurance dated October 1, 1926 and issued to Nick Pappageorgu by appellant insurance company, which certificate of insurance "provided that it (the certificate) was subject to the terms and conditions of a group policy of insurance dated June 30, 1926 . . . issued and delivered to Gary Works Employees Safety and Insurance Association . . . composed of employees of the Gary Works of the Illinois Steel Company".

The group or master policy provided among other things:

*"Insurance to be discontinued.* The insurance of any employee covered hereunder shall end when his employment with the employer shall end. . . .

"Temporary lay-off . . . shall not be considered as termination of employment for the purpose of this insurance unless the employer shall so elect."

The evidence further indisputably shows that Nick Pappageorgu was an employee of the Gary Works of the Illinois Steel Company and a member of said Gary Works Employees' Safety and Insurance Association on October 1, 1926, when said insurance became in force and continued to be an employee of said company and a member of said association until July, 1932, when he was "laid off on account of a reduction in the force". The evidence further indisputably shows that the premiums on said insurance were paid to and including August 31, 1932.

The amount of the premiums due on said insurance certificate was deducted from the insured's pay check from time to time by his employer and was accounted for from time to time to said association. This practice was authorized by an express provision in the insured's application for insurance. The funds so obtained by said association were remitted to appellant insurance company through the Chicago office of the Illinois Steel Company. The premium for the month of August, 1932 on Nick Pappageorgu's insurance was deducted from his last (July, 1932) pay check and was accounted for to said association pursuant to the practice theretofore followed.

In June, 1933, Nick Pappageorgu was rehired by the Illinois Steel Company at his former employment. He worked at said employment until July 25, 1934

when he suffered a sunstroke which resulted in his death on July 27, 1934. No deductions were made from the insured's pay check after July, 1932 and no further payments were made by anyone to appellant insurance company as additional premiums on his insurance.

Appellant contends further, in support of said assigned cause for new trial, that the evidence indisputably shows that the insured's employment ended in July, 1932 and that by reason of the first paragraph of the provisions of the .master policy, which provisions we have quoted above, Nick Pappageorgu's insurance ended at that time.

Appellee responds with the contention that the evidence shows that Nick Pappageorgu's employment did not end in July, 1932 but that he was given a "temporary lay-off" within the meaning of that term as used in the second paragraph of said provisions in the master policy, which we have quoted, and that the employer had not elected to consider the "temporary lay-off" as a "termination of employment for the purpose of this insurance" as provided in said second paragraph and that therefore the insurance did *not* end in July, 1932.

The policy in the instant case, and group insurance policies in general, fall within the class of contracts commonly called contracts for the benefit of third parties in that a group insurance policy, generally speaking, is a contract made by an insurance company with an employer for the benefit of an employee. It differs, however, from most contracts for the benefit of third parties in that in a group insurance policy the third party (the employee) is usually entitled to benefits under the contract only upon payment of a consideration (the premiums), while in most contracts for the benefit of third parties

the third party is entitled to benefits under the contract without paying a consideration.

It is clear that the coverage of the policy in the instant case is not limited so as to cover employees *only* when they are actually working from day to day; this is apparent from the provision, which we have quoted above, that "temporary lay-offs . . . shall not be considered as termination of employment for the purpose of this insurance unless the employer shall so elect."

The group insurance policy before us is drawn so as to include employees who work under a hiring which is wholly indefinite as to the term of its continuance, and which employment may be terminated at any time at the will of the employee or at the will of the employer.

Having considered the policy as a whole, we conclude that the word "employment" as used in the provision quoted above that "the insurance of any employee covered hereunder shall end when his employment shall end" *has reference to the relation of employer and employee* rather than to the contract of employment and said provision should be construed to mean that the insurance of any employee covered by the policy shall end *when the relation of employer and employee ends.*

Said provision of the group policy is qualified, however, by the provision above quoted, that "temporary lay-offs shall not be considered as terminaiton of employment for the purpose of this insurance *unless the employer shall so elect.*" (Our italics.) We think the last quoted provision, as used in this policy, means that a temporary lay-off of an insured employee does not terminate the relation of an employer and employee for the purpose of the insurance, *unless and until the employer elects* to con-

sider it as a termination of such relation for such purpose.

The evidence does not indisputably show whether insured's lay-off was a temporary lay-off or a permanent lay-off. There is evidence in the record which would sustain a finding that the lay-off was a permanent lay-off and there is also evidence in the record which would sustain a finding that the lay-off was a temporary lay-off. The question whether it was a permanent or a temporary lay-off is a question of fact which was within the province of the jury to find, and we assume, in support of the verdict, that the jury found that the lay-off was a temporary lay-off.

Records of the Gary Works Employees Safety and Insurance Association, which were introduced in evidence, showed that notice of termination of his insurance was mailed to Nick Pappageorgu on October 14, 1932.

Appellant insurance company knew that under the terms of the policy, which was a contract between it and the employer for the benefit of the insured, a third person, the insured was entitled to benefits under the policy *only* if his premiums were paid to the insurance company.

In order to make effective all of the terms of the policy, we must hold that, *if it be assumed* that such notice of "termination of insurance" was issued and mailed to the insured by said association, and *if it be further assumed* that the issuance and mailing of such notice *by the association* constituted an election *by the employer* to consider the lay-off as a "termination of (the) employment" within the meaning of said term as used in the second paragraph of said provisions of the master policy quoted above—appellant could not escape liability

because of such election unless and until knowledge of such election was brought home to him. See *Emerick* v. *Connecticut General Life Insurance Company* (1935), 120 Conn. 60, 179 Atl. 335, 105 A.L.R. 413. There is evidence in the record which would sustain a finding by the jury that the insured never acquired knowledge of any election by his employer to consider his lay-off as a "termination of the employment" and therefore we assume that the jury found that the insured did not acquire knowledge of such election, if any.

For the reason stated we hold that the evidence does *not* indisputably show, as appellant contends, that insured's "employment" ended in July, 1932 and that the evidence does *not* show that, by reason of the first paragraph of said provisions in the master policy which we have quoted, Nick Pappageorgu's insurance ended at that time.

We deem it expedient to note that we do not consider the case of *Emerick* v. *Connecticut General Life Insurance Company,* supra, controlling here. We have noted differences between the correlative terms of the group insurance policy involved in that case and such terms in the policy involved in this case, particularly the correlative provisions concerning the conditions under which a temporary lay-off would become a "termination of employment" within the meaning of that term as used in said policies, respectively, and, because of the variance of the terms of the two policies involved and for other reasons which we need not set forth here, we consider that case clearly distinguishable from the instant case. That opinion has, however, been very helpful to us in arriving at our conclusions herein and we rely upon it as a helpful but not a controlling authority.

The law questions which we have discussed were

also presented under the assigned causes for new trial that the verdict is not sustained by sufficient evidence, and that the court erred in overruling a motion by defendant (appellant here) for a directed verdict for appellant, which motion was made at the close of all the evidence. No good purpose would be served in discussing said law questions with particular reference to said assigned causes for new trial.

Appellant cites *Zeigler* v. *Equitable Life Assurance Society* (1935), 219 Iowa 872, 259 N.W. 769 and *Equitable Life Assurance Society* v. *Larocco* (1933), 68 Fed. (2d) 451 and other cases in support of the proposition: "Where there is a provision in the group policy such as is involved in this case, the question whether a termination of employment by an employer is a permanent discharge or a temporary lay-off rests entirely upon the intention of the employer."

Said cases do not support such proposition as a general proposition or as being applicable to an insurance policy similar to that in the instant case. Said decisions are each based upon a provision in the policy involved in each case to the effect that the insurance of the employee shall automatically cease upon termination of his employment with the employer "except that the employer may elect that all employees who, while insured hereunder, are temporarily laid off . . . shall be considered to be in the employment of the employer during such period." It is apparent that said provisions are very much different from the provisions of the policy in the instant case which we have construed.

No reversible error having been shown, the judgment is affirmed.