5 So.2d 808

**SHEARS v. ALL STATES LIFE INS. CO.**

**7 Div. 652.**

Supreme Court of Alabama.

Jan. 22, 1942.

Knox, Liles, Jones & Blackmon, of Anniston, for appellee.

Chas. F. Douglass, of Anniston, and Horace C. Wilkinson, of Birmingham, for appellant.

**LIVINGSTON, Justice.**

This action is to recover total and permanent disability benefits claimed to be due under a group policy of insurance and certificate issued by appellee, defendant in the court below, on April 1, 1929, upon the life of appellant, N. C. Shears, plaintiff in the court below, and other employees of the Southern Manganese Corporation, and kept in force by its successor corporations, including the Monsanto Chemical Company, by whom appellant was employed at the time he allegedly became permanently and totally disabled.

The master or group policy is referred to as master policy No. 103–G. A certificate numbered 273, insuring the life of appellant for $1,000, under the terms of the master policy, was issued and delivered to appellant on April 1, 1929, and a rider was afterwards issued and attached to the master policy and certificate numbered 273, increasing appellant's insurance to $2,000, as of April 1, 1928. The master policy and certificate contained a provision for "permanent total disability benefits," as hereinafter indicated.

Appellant rested its defense upon the theory that appellant's employment by the Monsanto Chemical Company, hereinafter called the employer, terminated either on June 15, 1938, or August 31, 1938, or that the policy and certificate sued on were cancelled as of June 30, 1938, by an agreement between appellee and employer, entered into on July 1, 1938; and that the appellant failed to furnish appellee with due proof of his disability before the policy was cancelled or before the termination of his employment.

The trial court gave the general affirmative charge, without hypothesis, for the appellee.

The pertinent provisions of the policy are:

"Employees Insured—Employees are automatically insured in accordance with the terms of the plan of insurance above, subject to the terms of this policy.

"The employer shall furnish the company with the names of all employees as they become eligible for insurance hereunder, with the information as to each, necessary to determine the age, the amount of insurance, and the effective date of the insurance.

"Unintentional neglect on the part of the employer to furnish the name of any employee eligible for insurance hereunder shall not invalidate the insurance on the life of such employee.

"Termination of Insurance—The insurance on any employee shall cease upon the termination of his employment, except as hereinafter provided. If an employee is disabled, given leave of absence, or temporarily laid off, the employment need not be considered terminated, provided the insurance is continued on all absent employees under like conditions.

"The employer shall notify the company of all employees whose employment shall terminate and also the dates of the terminations of their employment.

"Premiums—All premiums are payable in advance at the home office of the company, but may be paid to an authorized agent of the company upon delivery of a receipt signed by the president or secretary, and countersigned by said agent. If any premium shall not be paid when due, this policy shall terminate except as hereinafter provided.

"In addition to the advance premium there shall be due:

"1. To the company—

"(a) The balance, if any, of the first premium as determined by the amount of insurance on the employees initially insured hereunder, such balance to be due when determined.

"(b) A prorata premium for any additional or increased insurance computed to the next date on which premium shall be due, following the date such insurance is effective.

"2. To the employer—

"A refund of any unearned premium paid for any employee insured hereunder, whose insurance has terminated for any reason, other than death or permanent and total disability. * * *

"Renewal Privilege—This policy may be renewed from year to year for a further term of one year at the option of the employer, upon payment within the days of grace of the premium for the amount of insurance as renewed, as determined by the schedule of rates embodied herein. * *

"The Individual Certificates Furnished the Employees as Hereinafter Provided Shall Contain the Following Provision:

"Permanent Total Disability Benefits—'Upon due proof that since the payment of the initial premium upon this contract, before a default in the payment of any subsequent premium, and before the anniversary of this contract nearest the sixtieth anniversary of the date of birth, the insured has become wholly disabled by bodily injuries or disease and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the company will waive the payment of any premiums which may fall due on this contract for such employee during such disability and will pay in full settlement for such employee under this contract the amount of insurance in force hereunder at the time of the receipt of due proof of such disability in a 'fixed number' of installments chosen by the insured from the following table, the first installment to be paid immediately upon receipt of due proof of such disability. * * *

"Individual Certificate of Insurance and Conversion Privilege—The company will issue to the employer for delivery to each employee whose life is insured under this policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled and to whom payable. Any employee of the employer covered under this group policy shall, in case of the termination of employment for any reason whatsoever, be entitled to have issued to him by the company, without evidence of insurability, upon application to the company made within thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the company, except term insurance in an amount equal to the amount of protection under such group insurance policy at the time of such termination. * *

"Incontestability—This policy shall be incontestable after one year from its date of issue, except for nonpayment of premiums. * * *

"Entire Contract—This policy, together with the application of the employer, and the individual applications, if any, of the employees insured hereunder, shall constitute the entire contract between the parties hereto. All statements made by the employer or by the individual employees shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall be used in defense of a claim under the policy unless it is contained in the written application therefor."

On May 15, 1938, the employer paid to appellee the annual premium on master policy No. 103–G, subject to adjustments provided for in the policy, for the year beginning April 1, 1938, and ending March 31, 1939, listing all employees covered as of April 1, 1938, including appellant.

On July 1, 1938, at the request of the employer, the appellee cancelled the master policy (No. 103–G) as of midnight June 30, 1938. The record is silent as to whether or not appellant was notified of the intended cancellation, but it does appear that the trial court rejected an offer of proof that he received no such notice from either the appellee or employer, and there is no evidence that he consented to it.

Appellant testified that on June 15, 1938, Mr. O'Neal, employer's superintendent, called appellant to the superintendent's office and advised him, "I have got to lay you off awhile. On the conditions of the plant and all, although you would make us a good

man down on the lower end at No. 10 furnace, but you are not able to do that work. I am going to pay you * * * we are going to pay you for July and August your salary." Appellant further testified "I worked until I was laid off. They told me they were going to lay me off awhile. * * * I have never been back to work for Monsanto Chemical Company. They have never called me back to work. * * The Monsanto Chemical Company did not at any time notify me that I had been discharged. They did not tell me I had been discharged: the word 'discharge' was not used in any of the conversations with the chemical company." And further, that "After I received the certificate I paid premiums on the insurance: they taken it out of my pay: they told me they would take sixty percent of it and they would pay forty: in other words, I paid sixty percent of the premium and the company paid forty. That was the arrangement when it started in April 1929, and that arrangement continued until I left there. The sixty percent amounted to $1.20 the last policies."

Clearly, the evidence presented a question for the jury as to whether or not appellant was, prior to June 30, 1938, wholly disabled by bodily injury or disease, and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, within the meaning of the policy, and the decisions of this court. See Mutual Life Ins. Co. of New York v. Clyde Danley, Ala. Sup., 5 So.2d 743;[1] United States Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462; Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A.L.R. 852; New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547; New York Life Ins. Co. v. Torrance, 228 Ala. 286, 153 So. 463; Equitable Life Assur. Society v. Dorriety, 229 Ala. 352, 157 So. 59; Equitable Life Assur. Society v. Watts, 230 Ala. 297, 160 So. 713.

It has been said that the whole scheme of group insurance is paternalistic. The characterization may be apt as to some policies, but we doubt its correctness when applied to others.

The problem of determining the validity of the cancellation of a group insurance policy by an employer without the employee's consent had until recently been uniformly resolved by examining the status of the employee under the contract between employer and insurer, and predicating the result on a determination of whether or not the employee was a party to that contract. Some of the courts have held that he was not such a party, and have therefore sustained the cancellation and denied recovery.

The Court of Appeals of Ohio in the recent case of Hinkler v. Equitable Life Assur. Society, 61 Ohio App. 140, 22 N. E.2d 451, denied the right of cancellation without the consent of the beneficiary, adopting the traditional principle that the beneficiary of an insurance policy has a vested interest which, although defeasible by lapse, may not be destroyed by cancellation.

Appellee, in support of its insistence that the policy now before us was effectually cancelled as of June 30, 1938, cites the following authorities: Austin v. Metropolitan Life Ins. Co., La.App., 142 So. 337; Pool v. Protective Life Ins. Co., 26 Ala. App. 161, 155 So. 631, 633; Davis v. Metropolitan Life Ins. Co., 161 Tenn. 655, 32 S. W.2d 1034; Stoner v. Equitable Life Assurance Soc., 28 Dauph.Co.Rep., Pa., 235; Thompson v. Pacific Mills, 141 S.C. 303, 139 S.E. 619, 55 A.L.R. 1237; Duval v. Metropolitan Life Ins. Co., 82 N.H. 543, 136 A. 400, 50 A.L.R. 1276. We have carefully examined them. In the Austin, Stoner and Thompson cases, supra, the employee paid no part of the premiums. In the Davis case, supra, it affirmatively appears that the employee was given timely notice of the intended cancellation. In both the Thompson and Davis cases previous recovery had been had on policies issued in lieu of the ones sued on. In the Austin and Stoner cases the policy had lapsed by the express terms before the employee's death. The Davis case has been overruled, or at least modified or explained in the later case of Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 71 S.W.2d 1059. The plaintiff in the Duval case, supra, admitted that the employee's employment had terminated prior to his death and the case was tried on the question of waiver or reinstatement. Pool v. Protective Life Ins. Co., supra, is of no assistance here.

---

[1] Ante, p. 80.

The foregoing authorities, and others of like import, are not convincing that the employee under the group policy and certificate here considered is not a party to the contract. True, it falls within the class of contracts made for the benefit of a third party, differing, however, from most contracts of that nature in that under it the third party, the employee, would be entitled to its benefits only upon the payment of a consideration, and this the insurer knew.

■ The policy may be allowed to lapse by non-payment of premiums by the employer, or the insurer may cancel it for that reason, or it may terminate upon the expiration of its term without action on the part of anyone, or upon the termination of the employee's employment, because the contract so provides. Undoubtedly, where the employee contributes to the premium payment, he should have something to say regarding the cancellation; at least where the cancellation is by the affirmative action of either the insurer or the employer, or both. Under such circumstances, he has more than the interest of a third party beneficiary. He has an interest obtained through an expenditure of his own money. He must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled without his consent.

In the case of Prudential Ins. Co. v. Ferguson, 51 Ga.App. 341, 180 S.E. 503, 504, 506, the Court of Appeals of Georgia said: " 'Where a valid contract of insurance has been effectuated, the company can not cancel the policy without the consent of the assured, except where it may be permitted to do so by statute or by reservation in the policy itself. Such a reservation is valid, but, under the general rule, it will be strictly construed against the company.' 32 C.J. § 431, p. 1245."

As pertinent on this point, we quote from the case of Butler v. Equitable Life Assur. Society, 233 Mo.App. 94, 93 S.W. 2d 1019, 1025: "After a careful study of the authorities, we conclude that as to such a group policy as is involved in this case, wherein the group policy itself imposes burdens upon the insured employee and provides for a consideration to be paid by the employee for the protection and benefits he secures thereunder, then and in such event, such an insured is entitled to notice of cancellation."

In the case of Poch v. Equitable Life Assur. Society, 343 Pa. 119, 22 A.2d 590, 594, in an opinion dated September 29, 1941, the Supreme Court of Pennsylvania said: "Upon a review of the authorities, and upon reason as well, our conclusion is that, under a group policy like that now before us, the insured employee must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled or any of its effective provisions eliminated by either the employer or insurer, except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere: further, that in the absence of notice, an agreement of cancellation or modification like that here entered into between the Association and the Society is, as to such employee, legally ineffective to relieve the insurance company from liability under the original policy."

This court, in the case of Hatcher v. Branch, Powell & Co., 141 Ala. 410, 414, 37 So. 690, 691, said: "The right of either party to a valid contract of insurance to cancel it at pleasure can accrue only in three ways: First, by a concurrent agreement with the other party; second, by a previous reservation of the right in the conditions of the policy itself; third, by a provision in the state insurance law permitting it."

■ In the instant case, the premiums were paid for a year in advance, beginning April 1, 1938. The event insured against had happened, if at all, prior to the cancellation. For aught appearing, no notice was given to the employee, and he did not consent to the cancellation. A cancellation under these circumstances was legally ineffective to relieve the insurer from liability under the contract. See Crawford, Group Ins. § 41; Hanft, Group Life Ins., "Its Legal Aspects"; 2 Law and Contemp. Prob. 70; "Insurance, Recent Trends in Group Insurance," 12 N.C.Law Rev. 166; "Group Ins. Some Legal Problems," 26 Va.Law Rev. 487; "Cancellation of Group Insurance Without Consent of Employee," 49 Yale Law Journal 585.

Appellee insists that the giving of the general charge in its favor is sustainable on the alternative ground that appellant's evidence failed to establish that it had ever received due proof of total and permanent disability while the policy was still in force. That is to say, in this instance, before the termination of appellant's employment.

■ This insistence is untenable. This court has held that due proof of disability while the policy is in force is a condition precedent to liability. McCutchen v. All States Life Ins. Co., 229 Ala. 616, 158 So. 729; Protective Life Ins. Co. v. Hale, 230 Ala. 323, 161 So. 248; Metropolitan Life Ins. Co. v. Phillips, 236 Ala. 259, 182 So. 35; Protective Life Ins. Co. v. Cole, 230 Ala. 450, 161 So. 818; New York Life Ins. Co. v. Sinquefield, 231 Ala. 185, 163 So. 812; Burchfield v. Ætna Life Ins. Co., 230 Ala. 49, 159 So. 235; Kimsey v. Jefferson Standard Life Ins. Co., 230 Ala. 550, 161 So. 796; New England Mutual Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A.L.R. 1075; McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349.

Admittedly, due proof of disability was received by appellee, or its attorney acting for it, on about November 23, 1938.

■ ■ In construing the provisions of a group policy, similar to those here considered, the Supreme Court of Connecticut in the case of Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60, 179 A. 335, 337, 105 A.L.R. 413, said:

"The policy clearly does not use the word 'employment' in the sense of a legal contract of employment. It is so drawn as to include employees working under a hiring wholly indefinite as to the term of its continuance; their employment might, therefore, be terminated at any time at their will or that of the employer; and the hiring would not give rise to any contractual obligation, aside from the right to compensation for services actually performed. 1 Williston, Contracts, §§ 37–39. Nor does the contract apply to employees only when they are actually employed from day to day; this is apparent from the provision that if an employee is 'temporarily absent, or is temporarily laid off, or is given leave of absence,' the employment need not be considered terminated, provided the company was so notified. The word 'employment,' as used in the phrase 'termination of employment,' has reference to the position of an employee rather in the nature of status. Thus in Perkins v. Eagle Lock Co., 118 Conn. 658, 174 A. 77, we had before us a case in which action was brought upon a certificate of benefit issued by a corporation to its employee, under which a certain payment was to become due to the latter's wife upon his death while 'in the employ' of the corporation; and we sustained a judgment for the plaintiff, although the employee had not been engaged in working for the corporation for more than two years and there was an entry upon its records, made by the corporation four months after he ceased work, that he was 'through.' We said (118 Conn. 658, page 663, 174 A. 77, 79): 'It is clear that neither party to this certificate intended such an automatic termination of the relation of employee and employer, but that the word was intended to indicate the status of the holder of the certificate in relation to the company. The word as here used is intended to indicate a continuous right to the stated benefit until the contract relation is terminated by the withdrawal of the employee or discharge by the employer, with notice to the other party.' As the situation presented is one rather of the status of the employee in relation to his employer than of a contract of employment, the right of the employer at any time at its will to discontinue its contractual relationship to the employee is not conclusive that it might to the same extent terminate his status as an employee under the policy.

"In construing the contract we are bound to assume that both the employer and the company intended that the contract should operate fairly and justly to the employee, and that, in return for his acceptance of its provisions and payment to the employer of the amount deducted from his wages as premiums, he should be assured of the benefits apparently conferred by the policy. One of these benefits was the right given 'at the termination of his employment for any reason whatsoever,' upon application made to the company within thirty-one days after such termination, to receive from it a policy insuring him as regards his death or total permanent disability. That this was a benefit of very real value is evident because thereby he would be entitled to receive the policy even though at the termination of his employment his

physical condition were such that he could not, upon an application then made, secure a policy of insurance. If the employer could terminate the status of an employee, who was at the time temporarily laid off or absent on leave, simply by notifying the company that it had done so, without notice to him, he might very likely lose the benefit of the provision enabling him to take out this independent insurance, because the right to do so is limited to thirty-one days after the termination of employment. We cannot assume that either the company or the employer intended so to jeopardize the apparent right given to the employee. In order to make that right one of assured benefit to the employee, knowledge on his part of the termination of his employment would be necessary.

"The ultimate question is: What is the meaning of the phrase 'termination of employment' as used in the policy? It clearly does not mean the cessation of active employment or the termination of an existing contract of employment. It must mean such a termination of the relationship of employer and employee as will make effective all parts of the insurance contract. Viewing the policy as a whole, in order to make effective all its terms, we must construe the phrase as meaning a termination of which the employee had knowledge or notice. This is not to introduce any novel principle into the law. Thus the revocation of the authority of an agent, even where the principal may revoke it at will, is ineffective as to the agent without notice to him. Jones v. Hodgkins, 61 Me. 480, 483; 1 Mechem, Agency (2d Ed.) § 624; 1 Clark & Skyles Agency, § 173.

"So a guarantor who has given a continuing guaranty may revoke the guaranty, but such revocation is ineffective until notice is given. Gay v. Ward, 67 Conn. 147, 156, 34 A. 1025, 32 L.R.A. 818; Ricketson v. Lizotte, 90 Vt. 386, 98 A. 801; 28 C.J. p. 929. It may not be too much to say that, speaking generally, where two persons occupy a continuing relationship to each other and certain rights or liabilities will come into effect upon the termination of that relationship, neither party can terminate it except with the knowledge of or upon notice to the other.

"We are referred by the defendant to the cases of Beecey v. Travelers' Ins. Co., 267 Mass. 135, 166 N.E. 571; Colter v. Travelers' Ins. Co., 270 Mass. 424, 170 N.E. 407; Magee v. Equitable Life Assur. Society, 62 N.D. 614, 244 N.W. 518, 85 A.L.R. 1457; Thull v. Equitable Life Assur. Society, 40 Ohio App. 486, 178 N.E. 850, in which a conclusion differing from that which we have stated was reached, but the opinions in these cases do not seem to us convincing.

"We agree with the contention of the company that the employer was not its agent as regards any obligation to give notice of any termination of the employment to the employee. Duval v. Metropolitan Life Ins. Co., 82 N.H. 543, 136 A. 400, 50 A.L.R. 1276. Neither was the employer as regards knowledge of such termination the agent of the employee so that notice would be imputed to him. There could be no termination of the employment under the policy without knowledge or notice of it to the employee. Until it was terminated the employer was obligated to pay the company a premium based upon the continuance of the insurance. The employer could have put an end to its liability for that premium by terminating the employment to the knowledge of or with notice to the employee and informing the company that it had been terminated; but until it was so terminated the employer continued liable for the premiums due on account of the insurance."

■ After a careful study of the authorities, we conclude that as to such a group policy as is here involved, the employment cannot be terminated without the knowledge of or notice to the employee. See, also, Pearson v. Equitable Life Assur. Society, 212 N.C. 731, 194 S.E. 661; Garnsky v. Metropolitan Life Ins. Co., 232 Wis. 474, 287 N.W. 731, 124 A.L.R. 1489; John Hancock Mut. Life Ins. Co. v. Pappageorgu, 107 Ind.App. 327, 24 N.E.2d 428; Ambrose v. Metropolitan Life Ins. Co., 10 A.2d 479, 481, 18 N.J.Misc. 42; Leavens v. Metropolitan Life Ins. Co., 135 Me. 365, 197 A. 309.

Under the foregoing holding and the evidence in this case, it may be conceded that the jury had a right to find that appellant's employment terminated on September 1, 1938, the date to which his wage was paid, and that in such event the proof of loss submitted on or about November 23, 1938 was not in time.

Nevertheless, further questions are presented: Did appellant make due proof of

disability prior to September 1, 1938? And, if he did not, may such proof be waived, and was it waived in the instant case?

On August 16, 1938, attorney for appellant wrote appellee the following letter:

"All States Life Ins. Co., August 16, 1938.
"Montgomery, Alabama.

"Gentlemen:

"Re. N. C. Shears,
"Policy: Group 193 G
"Date: April 4, 1929
"Increased to $2000
"April 1, 1938
"Disability claim.

"Mr. N. C. Shears, of the Monsanto Chemical Company, formerly Southern Mangenese Company, has asked me to call upon you for blanks for his use in filing claim for permanent total disability.

"He also wishes me to advise you that he might consider some plan for convertible insurance.

"Please let me have, as early as you can, these blanks for use as here indicated.
"Very truly yours,
"Chas. F. Douglass."

On August 18, 1938, appellee replied, as follows:

"Mr. Charles F. Douglass, August 18, 1938.
"Attorney-at-Law,
"Anniston, Alabama.

"Dear Mr. Douglass:

"We respectfully acknowledge receipt of your letter of August 16th and suggest you refer the matter to the Monsanto Chemical Company of St. Louis. No part of the insurance coverage on employees of that company is now being carried by the All States. The coverage was transferred to another company some time ago, we think the Metropolitan but we are not sure, and we suggest you write the Monsanto Company for information.
"Yours very truly,
"W. C. Jennings,
"Vice President."

We pretermit the question of whether the Douglass letter of August 16, 1938, constituted due proof of disability.

This court in the case of Liverpool & London & Globe Ins. Co. v. McCree, 213 Ala. 534, 105 So. 901, 903, said: "The question recurs, Was there sufficient averment of facts in the replications of waiver as answer to the several pleas? The ground of denial of plaintiff's request for blanks, etc., was specific—'You have no contract of insurance.' That is to say, the legal effect of the averred facts was that of a denial of the existence of an insurance contract. * * * Honesdale Ice Co. v. Lake, etc., Co., 232 Pa. 293, 81 A. 306; Second Nat. Bank v. Lash Corp. [3 Cir.], 299 F. 371; Railway Co. v. McCarthy, 96 U.S. 258, 24 L.Ed. 693; Littlejohn v. Shaw, 159 N.Y. 188, 53 N.E. 810; Bank of Taiwan, Ltd., v. Union Nat. Bank of Philadelphia [3 Cir.], 1 F.2d 65. The pleas of waiver and estoppel can be predicated on this definite denial of the existence of the contract. The refusal under the averred facts to give, at plaintiff's request, the usual 'papers' on which to give the required notice, and to make the proof of loss within the required time, is but evidence or confirmation of the specific denial of the existence of the contract. Firemen's Ins. Co. v. Crandall, 33 Ala. 9; Strong v. Catlin's Adm'r, 37 Ala. 706; [City Council of] Montgomery v. Montgomery W. W. Co., 77 Ala. 248; Central City Ins. Co. v. Oates, 86 Ala. 558, 568, 6 So. 83, 11 Am.St.Rep. 67; Taber v. Royal Ins. Co., 124 Ala. 681, 26 So. 252; Ray v. Fidelity-Phœnix [Fire] Ins. Co., 187 Ala. 91, 65 So. 536; Continental Ins. Co. v. Parkes, 142 Ala. 650, 39 So. 204; Tayloe v. Merchants' F. Ins. Co., 9 How. 390, 13 L.Ed. 187; 4 Cooley's Briefs 3535C; 22 A.L.R. 408, note."

While it is true the policy involved in the McCree case, supra, was a fire insurance policy, the rule is equally applicable to a group policy.

Conceding that under the provisions of the policy here considered, the presentation of preliminary proof becomes a condition precedent to the right of disability benefits, it is nevertheless well settled that as the provision is inserted exclusively for the benefit of the insurer, to enable it seasonably to make inquiry into the circumstances of the loss, it may be waived by the insurer, and that such a waiver, being essentially a matter of intention, need not be based on a new consideration, such waiver may be implied from any acts or conduct on the part of the insurer inconsistent with an intention to insist upon literal compliance with the condition.

Thus where an insurer refuses to pay a loss because of some alleged defense wholly apart from the furnishing of pre-

liminary notice and proof of loss, it has been repeatedly held that it thereby waives the necessity of furnishing such notice and proof, except on the trial, upon the ground that such conduct of the insurer is tantamount to a statement that preliminary proof of loss is not desired, and upon the ground that a policyholder need not do a vain thing: nor is he to be prejudiced for failure to observe a technicality, the performance of which would be useless. See Poch v. Equitable Life Assur. Society, 343 Pa. 119, 22 A.2d 590.

Appellee's letter of August 18, 1938, is a definite denial of the existence of the contract, and the failure or refusal to furnish blanks for appellant's use in filing claim for permanent total disability, coupled with appellee's insistence that the contract was cancelled as of June 30, 1938, is evidence or confirmation of the specific denial of the existence of the contract. And the evidence is sufficient to support a finding by the jury that the policy was in force at the time the denial was made. If the policy was in force to September 1, 1938, a jury question, due proof of disability was waived.

Under our construction of the phrase "termination of employment," there is no evidence in the record which would support a finding by the jury that appellant's employment terminated on either June 15, 1938 or June 30, 1938.

The foregoing should be sufficient to guide the lower court on a retrial of this cause.

Reversed and remanded.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.