71 So.2d 292

**METROPOLITAN LIFE INS. CO. et al.**

**v.**

**KORNEGHY.**

**6 Div. 687.**

Court of Appeals of Alabama.

Feb. 2, 1954.

Rehearing Denied March 3, 1954.

Cabaniss & Johnston, E. T. Brown, Jr., Birmingham, for appellant Metropolitan Life Ins. Co.

Burr, McKamy, Moore & Tate, Samuel H. Burr, Birmingham, for appellant Republic Steel Corp.

Lipscomb & Brobston, W. E. Brobston, Bessemer, for appellee.

CARR, Presiding Judge.

This is an appeal by the Republic Steel Corporation, employer, and the Metropolitan Life Insurance Company, insurer.

The basis for the suit is the claim by the appellee, insured, that the appellants wrongfully eliminated the former from coverage and benefits under a group policy of insurance.

In the court below the presiding judge, without the aid of a jury, rendered judgment in favor of the insured.

Apparently the amount of the judgment is the sum total, with interest, of all contributions the insured had made to premium payments during the entire time he had enjoyed coverage under the policy.

There is no dispute or conflict in the evidence.

In 1938, pursuant to an application by the employer, the insurer issued a group policy of insurance and made the application a part thereof.

In short, the contract provided coverage and benefits for those employees of the Republic Steel Corporation "who are eligible for the insurance provided hereunder in accordance with the Formula and Schedule of Benefits hereinafter contained."

The following are provisions of the master policy which we think are pertinent to this review:

"An Employee must make written application for insurance hereunder on forms furnished by the Company in order to be insured hereunder after a Preliminary Period."

"The Life Insurance on any Employee insured hereunder shall cease automatically thirty-one days after the date of the termination of employment of such Employee. The Temporary Disability Insurance on any such Employee shall cease automatically on the date of the termination of employment of such Employee."

"The insurance of any Employee insured hereunder who shall have notified the Employer that his insurance under this Policy is to be discontinued, shall cease on the last day of the calendar month during which such notice of discontinuance was received by the Employer. Failure of any Employee to make contribution when due, as required by the Employer, to the cost of his insurance hereunder shall be deemed notice to the Employer that his insurance hereunder is to be discontinued."

"Section 4. Payment of Premiums—The premiums due on and after the date of issue of this Policy for benefits provided hereunder shall be determined and shall be payable in accordance with Sections 5 and 15 hereof.

"All premiums falling due under this Policy, including adjustments thereof—if any—are payable by the Employer, on or before their respective due-dates, direct to the Company, but may be paid to an Agent or other authorized representative of the Company, in which case the Company's official premium receipt signed by the President, Vice-President, Actuary, Treasurer or Secretary of the Company and countersigned by the Agent or other authorized representative of the Company receiving the premium, shall be exchanged for such payment. The payment of any premium shall not maintain the insurance under this Policy in force beyond the date when the next premium becomes payable, except as provided in the next paragraph.

"If the Employer has not previously given written notice to the Company that this Policy is to be discontinued, a grace period of thirty-one (31) days, without interest charge, shall be granted to the Employer for the payment of every premium after the first, during which period this Policy shall continue in force.

"If any premium be not paid within the days of grace, this Policy shall thereupon be discontinued, but the Employer shall, nevertheless, be liable to the Company for the payment of all premiums then unpaid, together with the premiums for the days of grace. If, however, written notice is given by the Employer to the Company, during the grace period, that the Policy is to be discontinued, then the Employer shall be

liable to the Company for the payment of a pro-rata premium for the period commencing with the date on which the last premium became due and ending with the date of receipt of such written notice by the Company.

"Section 5. Renewal Privilege—The Employer may renew this Policy on May 1, 1938 and at each succeeding anniversary of such date for the term of one year, provided the number of Employees then insured hereunder is, in the case of a Contributory Policy, not less than seventy-five (75) per cent. of the number of eligible Employees and, in the case of a Non-Contributory Policy, not less than the total number of eligible Employees, and provided in either case the number of Employees then insured hereunder is not less than fifty (50). Renewal is conditioned upon the payment of the premiums then due as computed in the manner set forth in Section 15 hereof and based upon such Schedule of Life Insurance Premiums and such Temporary Disability premium rate as may then be determined by the Company.

"On written request of the Employer, approved by the Company, premium payments may, if not then so payable, be changed at any anniversary of the date of issue or renewal of this Policy, so as to be payable annually, semi-annually, quarterly or monthly; in which event the dates and provisions relating to the payment of premiums will be changed to conform to such modified periods of payment.

"Section 6. Participation in Divisible Surplus—This Policy is a participating contract and the Company shall annually ascertain and apportion any divisible surplus accruing under policies of this class. Any such divisible surplus shall be paid in cash to the Employer or, upon written request from the Employer to the Company, shall be applied to the payment of the aggregate of the premiums next falling due under this Policy. In either event, such divisible surplus is to be distributed or applied by the Employer, according to the respective rights thereto—if any—of the parties contributing to the premiums hereunder.

"Section 7. Incontestability—This Policy, as herein defined, the application of the Employer, a copy of which is attached hereto, and the individual applications—if any—of the Employees, constitute the entire contract between the parties, and except for non-payment of premiums, shall be incontestable after one year from its date of issue."

"Section 9. Certificates—The Company will issue to the Employer, for delivery to each Employee insured hereunder, an individual Certificate and Certificate Riders—if any—reciting the benefits to which such Employee is entitled under this Policy and the name of the Beneficiary designated by the Employee."

"Section 12. Conversion Privilege—Upon termination of employment of any Employee all his insurance hereunder shall cease in accordance with the Formula, and the said Employee shall be entitled to have issued to him by the Company without evidence of insurability and upon application made to the Company within thirty-one (31) days after such termination of employment, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then-attained age (nearest birthday), a policy of Life Insurance in any one of the forms customarily issued by the Company, except Term Insurance, in an amount equal to or, at the option of the Employee, less than the amount of his Life Insurance under this Policy at the time of such termination."

"Section 13. Register—The Employer shall keep a Register (in card index form), which shall show at all times the names of all Employees ever insured hereunder and the amount of insurance in force or previously discontinued on each of such Employees, together with the date when any insurance became effective or was discontinued or of any increase or decrease thereof. The Employer agrees to allow the Company to inspect and audit such Register at any time."

The application for the master policy provides in part:

"It is further agreed that in the event of the discontinuance or suspension of the payment of the stipulated payments or premiums payable under this contract, prompt notification of such discontinuance or suspension shall be given by the employer to the employees."

The contract does not contain any agreement on the part of the employer to continue the payment of premiums as to any employee beyond the current calendar month.

There is no evidence that the insurance program contemplated any conditions of employment for the insured, or that it formed any part of the compensation for their labors.

The employees were not compelled or required to make application for the benefits under the plan, and having done so they were at liberty to withdraw at any time and the withdrawal would be effective "on the last day of the calendar month during which such notice of discontinuance was received by the Employer."

On September 9, 1944, the appellee was employed by the Republic Steel Corporation and became eligible for coverage under the terms of the master policy. He executed an individual application and received a certificate of insurance.

In the application he authorized the employer "to make from my pay, my contribution to the cost of such Insurance, as described in such announcement, a copy of which I have received."

The employer forwarded the premium payments directly to the insurer.

The indicated "announcement" contains this provision:

"In arranging this Plan, the Corporation hopes to continue it indefinitely. If at any time it should become necessary to terminate or change the Plan, it will be done only after careful consideration."

On April 27, 1949, the employer notified the insurer that it intended to terminate the insurance coverage, as of May 31, 1949, for all of its employees who were covered by the United Mine Workers of America Welfare and Retirement Fund. The appellee was included in the group to be affected.

The amendment was prepared and executed in accordance with the expressed intention.

On May 3, 1949, the appellee received the following notice:

> "Republic Steel Corporation
> Important Notice
> "April 30, 1949

"After May 31, 1949, employees who are covered by the United Mine Workers of America Welfare and Retirement Fund, to which Republic is a substantial contributor, will not be eligible for insurance under the employees Group Life Insurance Plan of Republic Steel Corporation.

"Since our records indicate that you are covered by such fund, no further deductions will be made from your pay for group insurance after May 31, 1949. Therefore, your group insurance under the Republic plan will terminate on May 31, 1949.

"Under a special arrangement made with the Metropolitan Life Insurance Company, you may, if you wish, make application without medical examination for an individual policy of life insurance, in an amount equal to or less than the amount of your insurance under the Republic plan. The premium rate for such policy would be the insurance company rate applicable to your age and all premiums would be payable by you.

"If you wish to apply for an individual policy, you must make application and the first premium payment, directly to any district office of the Metropolitan Life Insurance Company, or its home office at 1 Madison Avenue, New York 10, New York, on or before July 1, 1949.

"Additional information may be obtained from the Mine Clerk.
> "Republic Steel Corporation"

The indicated amendment was the thirty-seventh to the master policy. After its effective date no further contributions on

premium payments were deducted from appellee's pay, or otherwise paid.

The group master policy was issued on a term basis, and it had no loan or cash surrender value either to the employer or employee.

There is no contention that the appellee was entitled to any unpaid coverage benefits which had accrued prior to the date of the alleged cancellation. This suit is anchored on the claim that he was a party to the contract of insurance and he could not be excluded from its provisions and benefits without his consent.

The appellants press several positions, among them is that under the undisputed evidence in the case the consent of the insured was not required or essential.

We do not think that we should be particularly concerned with the method employed to cancel the appellee's insurance.

If there was no contractual obligation upon the employer or insurer to keep the entire master policy in effect, the plan could be modified to the extent that certain classes of the employees could be eliminated from coverage. That is to say, the greater power would necessarily include the lesser. The parties seemed to have assumed that this was their right. As we have indicated, there were thirty-six amendments to the master policy prior to the one of instant concern.

We want it made clear that we are not here injecting into the review any theory of waiver or estoppel.

■ It is our task to give effect to all parts of the contract and to give a reasonable interpretation to all of its provisions. We must strive to determine the intention of the parties which is the polestar of all rules of construction. We are certainly not privileged to make a new or different contract from that which was intended.

Our Supreme Court in Birmingham Water Works Co. v. Windham, 190 Ala. 634, 67 So. 424, 425, gave this guide:

"Contracting parties usually engage upon rational considerations and to reasonable effects and ends; and, when the courts find it necessary to construe instruments of obligation, it is ever proper, and often essential, for them to assume, at least prima facie, that the unreasonable and irrational was not the contractual intent. The whole instrument must be considered, and out of this will and must come the intelligent judgment of what was the intention of the parties."

There seems to be some conflict in the authorities with reference to the relationships of the parties affected by group policy contracts. The majority rule is stated in 45 C.J.S., Insurance, § 455, at page 111:

"A contract of group insurance being one between the employer and the insurance company, as discussed supra § 238, the employer has the right to cancel such a policy, not only in cases where the employer pays the whole premium, but also in cases where the employee contributes toward their payment, and it is not within the power of the employee or insured to prevent cancellation and keep the policy in force. The employee has, however, been held to be entitled to notice, although the contrary has also been held. The employer does not have the right to cancel the policy without the consent of the employee or beneficiary where the premium has been paid, unless he is given that right on the face of the policy."

See also, 29 Am.Jur., Insurance, § 1382, p. 1033.

So far as we are able to find, the question in similar factual form has not been decided by our appellate courts.

There are statements in the opinion in Shears v. All States Life Ins. Co., 242 Ala. 249, 5 So.2d 808, 812, which appear to sustain appellee's position that his consent was required to effectively eliminate his rights under the policy. Particularly this:

"The policy may be allowed to lapse by non-payment of premiums by the employer, or the insurer may cancel it for that rea-

son, or it may terminate upon the expiration of its term without action on the part of anyone, or upon the termination of the employee's employment, because the contract so provides. Undoubtedly, where the employee contributes to the premium payment, he should have something to say regarding the cancellation; at least where the cancellation is by the affirmative action of either the insurer or the employer, or both. Under such circumstances, he has more than the interest of a third party beneficiary. He has an interest obtained through an expenditure of his own money. He must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled without his consent."

There are other statements to like effect.

■ Of course, we must follow this authority, if we conclude that factual analogy forces its application. Title 13, § 95. Code 1940.

Chief Justice Marshall observed in Ogden v. Saunders, 12 Wheat. 213, 6 L.Ed. 606: "It is a general rule * * * that the positive authority of a decision is coextensive only with the facts on which it is made."

Our review will necessitate a rather extended analysis of the Shears case in an effort to illustrate our view of its inapplicability to the case at bar.

In that case the premiums for the remainder of the policy year, after the cancellation, had been paid. More significantly, the coverage benefits had accrued, if at all, prior to the date of cancellation.

There are other dissimilarities and distinctions, but these are basically sufficient for illustrative purposes.                     .

We are certainly in accord with the holding that under these circumstances the cancellation attempt could not be effective against the insured without his consent.

It should be noted that the court was not required to make a distinction between notice and consent. Under the undisputed evidence the insured did not even have notice.

In our view the authorities cited in support of the conclusions do not support the theory that both notice and consent are essential to effective cancellation.

Some emphasis is given to the case of Hinkler v. Equitable Life Assur. Society, 61 Ohio App. 140, 22 N.E.2d 451. The Ohio Court of Appeals gave effect to the grace period of thirty-one days and held that the policy could not be cancelled without the consent of the insured before the expiration of this extended time. In other words, the court held that the policy was in force for the time during which premiums were paid when the grace period was taken into account.

The Supreme Court cites Prudential Ins. Co. of America v. Ferguson, 51 Ga.App. 341, 180 S.E. 503, and quotes from the opinion Sec. 431 of 32 C.J., p. 1245. See also 45 C.J.S., Insurance, § 446.

The Georgia Court of Appeals had under review facts in many respects similar to those in the Shears case. According to the allegation of the complaint the coverage benefits accrued prior to the date of cancellation of the initial policy and the substitution therefor. It appears also that the insured did not even have notice of the cancellation and substitution. The quotation from 32 C.J. is lifted from the portion of the text which treats of contracts between individuals and insurance companies.

Our Supreme Court cites and excerpts from the opinion in the case of Butler v. Equitable Life Assur. Society, 233 Mo. App. 94, 93 S.W.2d 1019, 1023. The Kansas City Court of Appeals observed:

"The question referred to is so clearly stated in respondent's (plaintiff's) brief, that we here quote the same: 'Apparently the only real issue involved in this case is whether it is necessary under a group policy such as was issued by the defendant on July 1, 1926, in order to cancel said policy, to obtain the consent of the employee *or notify him of the fact that said policy is being cancelled.'* " (Emphasis ours.)

The facts disclose that the insurer attempted to show that the insured had been given notice of the cancellation of the original policy and that a new one had been substituted in its stead, but in this aspect the proof failed.

In response to the review the court announced the holding which is quoted in the Shears case.

It is evincingly clear that the question of paramount concern was the matter of notice. This is not an authority that consent is also required.

The Supreme Court quotes somewhat at length from the opinion in the case of Poch v. Equitable Life Assur. Society, 343 Pa. 119, 22 A.2d 590, 592, 142 A.L.R. 1279. The effect of this holding is that notice is essential. In the body of the opinion the Supreme Court of Pennsylvania had this to say:

"In Miller v. Travelers Ins. Co., 143 Pa. Super. 270, 17 A.2d 907, two group policies were issued to the Lehigh Railroad Company, one of which was a group life policy covering railroad employees who joined the plan and who, like the insured in the present case, authorized premium payments to be deducted from their wages, and individual certificates were issued naming the appellant in that case as beneficiary. Both of the group policies were later cancelled in their entirety by mutual agreement between the insurer and the Railroad Company, of which the insured was notified but to which he did not consent. The insured died subsequent to the effective date of cancellation, whereupon the beneficiary sued to enforce the group policies, contending that their cancellation was ineffective, since made without the insured employee's consent. It was held that, under the circumstances there presented, the cancellation by mutual agreement of the insurer and the company was effective and binding upon the insured, *despite his lack of consent*. The court said (143 Pa.Super. at pages 273, 274, 275, 17 A.2d at page 908): 'It has been uniformly held, in decisions dealing with group life and accident insurance policies substantially similar to those here involved, that the insurer and the employer are the primary contracting parties. Whether or not a policy shall continue depends on their will. It is not within the power of the beneficiary to keep a group contract of insurance in force or to abrogate it. The insured employee or his beneficiary have no greater rights than are provided in the policy, certainly no vested right which would prevent cancellation by mutual agreement between the insurer and the employer, especially where reasonable notice of cancellation is given to the employee. * * * The life insurance policy before us is for a distinct form of insurance differing in many if not most of its aspects from the ordinary life insurance, where usually a beneficiary may acquire a vested interest. * * * Here the insured received twenty-eight days notice of the intended cancellation and in that interim took no steps to avail himself of the right to subscribe to other insurance.' The court held further (143 Pa.Super. at page 276, 17 A.2d 907) that, in the absence of a provision in the policy to the contrary, there is no principle which requires such a policy to be cancelled only on its anniversary date and, therefore, nothing which would prevent cancellation as of the end of any month when the premiums were payable." (Emphasis ours.)

Then the court reached this conclusion:

"Had the Society, in the present case, given the insured employee reasonable notice of the intended cancellation of the disability provision, by mutual agreement between it and the Association, then, under the decision in Miller v. Travelers Ins. Co., supra, it would follow that such provision was effectively eliminated as of September 1, 1932, as the Society contends. In the absence of notice to the insured, it does not follow, however, as the opinion in the Miller case recognizes, that the insurer can thus effectively be relieved from liability, especially where, as in the instant case, the premiums are paid by the insured employee. Thus, in Butler v. Equitable Life Assur. Soc., 233 Mo.App. 94, 93 S.W. 2d 1019, 1025, where, in an action, like the

present, for disability benefits under a group policy, the insurer defended on the ground that the old policy had been cancelled by mutual agreement between it and the employer prior to the incurring of the insured employee's disability and the new policy then issued did not contain a total disability provision, the court held that the employee's consent was not a prerequisite to cancellation, but affirmed a judgment against the insurer, made upon a finding that notice of cancellation had not been given * * *."

The case of Hatcher v. Branch, Powell & Co., 141 Ala. 410, 37 So. 690, cited and quoted from in the Shears case, had nothing to do with a group policy. An examination of the opinion will indicate clearly that it has no bearing on the question of instant concern.

In the Shears case the court cites without comment: Crawford, Group Ins., Sec. 41; Hanft. Group Life Ins., "Its Legal Aspects"; 2 Law and Contemp.Prob. 70; "Insurance, Recent Trends in Group Insurance," 12 N.C. Law Rev. 166; "Group Ins. Some Legal Problems," 26 Va. Law Rev. 487; "Cancellation of Group Insurance Without Consent of Employee," 49 Yale Law Journal 585.

All of these treatises are not available to us for inspection and study.

2 Law and Contemp.Prob. 70 and 26 Va. Law Rev. 487 each treat in a very general way the nature and history of group insurance and some legal problems relating to these contracts. We do not find any declaration here that the consent of the insured is essential to effective cancellation of a group policy.

49 Yale Law Journal, p. 585, contains this statement:

"The problem of determining the validity of cancellation of a group insurance policy by an employer without the employee's consent had until recently been uniformly resolved by examining the status of the employee under the contract between employer and insurer, and predicating the result on a determination of whether or not the employee was a party to that contract. The majority of the courts have held he was not such a party, and have therefore sustained the cancellation and denied recovery to the named beneficiary."

It will be noted that this is practically the same thing the Supreme Court said in the Shears case.

The following statement appears in the Shears case [242 Ala. 249, 5 So.2d 811]:

"In the Davis case, supra, [Davis v. Metropolitan Life Ins. Co., 161 Tenn. 655, 32 S.W.2d 1034], it affirmatively appears that the employee was given timely notice of the intended cancellation. * * * The Davis case has been overruled, or at least modified or explained in the later case of Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 71 S.W.2d 1059."

We are inclined to the view that our Supreme Court is here giving some emphasis to "timely notice" and the reference to modification and explanation by the later case was added parenthetically.

This view was more strongly fortified after we read and studied the Smithart case. In the latter case there was no question of notice or consent involved. The master group policy expired by its own limitations because the plant at which the insured was employed ceased operation. The court stated the reviewable question as follows [167 Tenn. 513, 71 S.W.2d 1060]:

"Complainant's contention is that the contract matured when he became wholly and permanently disabled while the contract was in force."

This is all the Tennessee Supreme Court said about the holding in the Davis case:

"In the consideration of this case, we have kept in mind the ruling made in Davis v. Metropolitan Ins. Co., 161 Tenn. 655, 32 S.W.2d 1034, that in contracts of group insurance the insurer and the employer are the original or directly contracting parties, and that the rights of the insured employee are incidental to the primary con-

tract so entered into. But when, as here, the insurer issues its certificates to the employees and the latter contribute a portion of the premium paid by the employer, there arises a definite contractual relation between the insured employees and the insurer, and the certificates become integral parts of the insurance contract. The group policy and the certificate are to be construed and enforced together."

In the case of Kloidt v. Metropolitan Life Ins. Co., 16 A.2d 274, 279, 18 N.J.Misc. 661, the master group policy was amended by agreement between the employer and the insurer. The amendment related to changes in benefits and coverage. Prior to the effective date of the amendment, notice of the proposed change was delivered to the insured and he was requested to return his original certificate in order that a new one might be issued to him. This he failed or refused to do. After the effective date of the amendment he wrote his employer that he was satisfied with his insurance contract and desired to continue it without change. The insured brought suit against the insurer for benefits which accrued subsequent to the date of the changes in the provisions of the group policy.

The appellate court stated the reviewable issues to be whether or not the insurer and the employer could amend the provisions of the master policy without the consent of the insured. In response to the review the court referred to a part of the statement which we have quoted above from the Smithart case and said:

"The statement above made as to the contractual relationship between the employee and the insurer was not necessary to the decision of that case and is in conflict with the determination of most of the other courts."

The court also discussed the holding in the Davis case and approved it. The case of Butler v. Equitable Life Assur. Soc., supra, was also cited with approval.

The following conclusion was reached in the Kloidt case, supra:

"I am, therefore, of the opinion that under the great weight of the authorities in this country, and the logic and reason to be deduced from the stipulated facts and exhibits in this case, that the defendant and assured, General Motors, could, without notice to the plaintiff, make effective the changes and alterations of the original contract of insurance as set forth in this case."

See also, Hayes v. Equitable Life Assur. Soc., 235 Mo.App. 1261, 150 S.W.2d 1113.

It is fitting to note that some of the appellate courts apply the term "vested interest" with limited effect. For example in Nick v. Travelers Ins. Co., 238 Mo.App. 1181, 185 S.W.2d 326, 337, the court said:

"The great weight of authority is to the effect that such a policy as the one under our consideration gives to the contributing employee, although not a party to the policy itself, a vested interest in and to the policy in so far as it affects him, and gives rise to certain rights in him as to notice of termination of employment, and of any modification or cancellation of insurance thereunder affecting him."

Our diligent study of the authorities leads us to the conclusion that a majority of the appellate courts of the country hold to the view that, under factual circumstances analogous to those in the case at bar, timely notice should be given the insured of any amendments to or cancellation of the master group policy.

While we are not called upon at this time to declare that we adopt this rule, we are frank to state that it certainly seems to be more in accord with fair treatment of the insured employee.

■ We do hold that in the instant case the amendment of concern to the master policy was effective as to the appellee without his consent or agreement.

It follows that as to each appellant, Republic Steel Corporation and Metropolitan Life Insurance Company, the judgment below is reversed and the cause is remanded.

It is so ordered.

Reversed and remanded.