221 So.2d 372

Eris SMITH

v.

KENNESAW LIFE AND ACCIDENT INSURANCE COMPANY.

7 Div. 799.

Supreme Court of Alabama.

March 27, 1969.

Dortch, Allen, Wright & Wright, Gadsden, for appellant.

Hobdy G. Rains and J. D. Pruett, Gadsden, for appellee.

**14**

LIVINGSTON, Chief Justice.

This appeal is from a judgment for the defendant by the Circuit Court of Etowah County, Alabama, in a suit for death benefits claimed under a group life insurance policy on the life of appellant's husband. The case was submitted upon a stipulation of facts and documentary evidence. No testimony ore tenus was presented to the trial court. Issue was joined on the complaint by the defendant and there is no question raised in connection with the pleading. The circuit court entered a judgment for the defendant and the costs of court, and the plaintiff duly and seasonably perfected her appeal from that judgment.

The appellant assigns seven alleged errors, all relating to the ruling of the court in rendering judgment for defendant. The question then for this Court to decide is whether the policy and the individual certificate issued to the employee by the appellee afforded life insurance coverage on the life of appellant's husband at the time of his death.

The Stipulation of Facts and Documentary Evidence is as follows:

"Come now the plaintiff and defendant in the above-styled proceeding by and through their attorneys of record and each desiring to submit the issues as presented by the respective pleadings heretofore filed in this proceeding on behalf of each party based upon stipulated facts and documentary evidence and without any further evidence being presented ore tenus to the court, it is hereby agreed between the plaintiff and defendant that the following facts and documentary evidence are true and correct and shall be considered as such by the court:

"1. On the 8th of August, 1964, the City of Gadsden, Alabama, and the defendant entered into a contract for the insuring of the employees of the City of Gadsden against certain hazards and events, a full and correct copy of which contract is attached hereto as Exhibit 'A.'

"2. The group policy of insurance written pursuant to the terms of the said contract became effective on the 1st of September, 1964, at which time the plaintiff's husband was an employee of the City of Gadsden within the definition of the policy, a full and correct copy of which (disregarding any handwritten notations thereon) is attached hereto as exhibit 'B.' The same day, evidence of coverage thereunder, a certificate of insurance, was issued by the defendant to the plaintiff's husband. A copy of the said certificate, true and correct for all but the typewritten entries thereon, which shall be disregarded by the court, is attached hereto as Exhibit 'C.'

"3. On the 22nd of March, 1965, the plaintiff's husband became too ill to work and was placed on a disability leave of absence, which condition and which leave of absence continued without interruption until his death.

"4. In August, 1965, the City of Gadsden and Trustee Life Insurance Company entered into a contract for the insuring of the employees of the City of Gadsden against certain hazards and events, a true and correct copy of which is attached hereto as Exhibit 'D.'

"5. On the 31st of August, 1965, the contract and policy of insurance between the defendant and the City of Gadsden (Exhibits 'A' and 'B') terminated and the policy of insurance issued pursuant to the contract between the City of Gadsden and the Trustee Life Insurance Company (Exhibit 'D') became effective. A true and correct copy of the latter policy of insurance is attached hereto as Exhibit 'E.' The plaintiff's husband was, on the 1st of September, 1965, an employee of the City of Gadsden within the terms of Exhibit 'E.'

"6. Pursuant to the terms of the contract (Exhibit 'D') and policy of insurance (Exhibit 'E') certificates of insurance were issued to employees of the City of Gadsden. Attached hereto as Exhibit 'F' is a true and correct copy of that issued to the plaintiff's husband. Exhibit 'G' hereto is a true and correct copy of the supplemental life insurance certificate issued by the Trustee Life Insurance Company to the plaintiff's husband. Both Exhibits 'F' and 'G' became effective on the 1st of September, 1965. Exhibits 'E,' 'F' and 'G' were all in effect on the 20th of September, 1965.

"7. On the 20th of September, 1965, the plaintiff's husband died.

"8. The amount of life insurance coverage on the plaintiff's husband under the policy issued by the defendant and that issued by the Trustee Life Insurance Company was ten thousand dollars ($10,000.00) under each.

"9. Full premiums were paid by and for the plaintiff's husband to the defendant during, but only during, the period 1st September, 1964 to 31 August, 1965 and to the Trustee Life Insurance Company during but only during the period 1st September, 1965 to 20 September, 1965. Both the defendant and the Trustee Life Insurance Company accepted the premiums paid by and for the plaintiff's husband during the times stated.

"10. The plaintiff is the named and true beneficiary of all life insurance proceeds due under Exhibits 'B' and 'E' and the certificates issued thereunder. All requirements relative to payment of the said proceeds (e. g., demand, notice of death) have been fully met and she is the person entitled to receive the life insurance proceeds from the defendant's policy (Exhibit 'B'), if any be due.

"11. That Kennesaw Life and Accident Insurance Company has heretofore paid any and all disability benefits and medical payment benefits which were due under the group policy issued by Kennesaw Life and Accident Insurance Company to the City of Gadsden and Dewey M. Smith, husband of the plaintiff, who is the named beneficiary."

The City of Gadsden after receiving bids on insurance for employees of the City, the Water Works and Sewer Board, accepted the low bid of Kennesaw Life and Accident Insurance Company, and a contract was entered into by and between the City and said Company on the 24th day of August, 1964. Thereafter, Kennesaw Company issued the group policy, and issued to the employees, including Dewey M. Smith, husband of the plaintiff, an individual certificate.

On the 22nd day of March, 1965, the plaintiff's husband became too ill to work and was placed on a disability leave of absence, which condition and leave of absence continued without interruption until his death on September 20, 1965.

Under Section 13 of the policy (Record XV), there was a provision that the insurer could not cancel the policy but that the rate could be adjusted at any due date after the first anniversary date. There was also a provision that the City may cancel the policy at any time upon giving written notice thirty days in advance.

Before the end of the policy year, the City of Gadsden asked for bids and thereafter, in August of 1965, entered into a

contract with the low bidder, Trustee Life Insurance Company. A group policy was issued and delivered September 1, 1965, with individual certificates going to the employees.

Many of the conditions in both contracts were exactly the same, and we call attention at this time to Section 1 of General Conditions which appears in both contracts, and we quote the last line: "The City is to deal with only one insurance company for a complete group coverage."

It is stipulated that the amount of life insurance coverage under the first policy issued by the defendant insofar as it applied to the plaintiff's husband was $10,000.00. Full premiums were paid to Kennesaw during the period September 1, 1964 through August 31, 1965, and thereafter to Trustee Life Insurance Company during, but only during, the period of September 1, 1965 to September 20, 1965 (date of death). All requirements relative to payment have been fully met by the plaintiff in the suit below, and she was the person entitled to receive the life proceeds, if any be due. There was a final stipulation that Kennesaw had paid any and all disability benefits and medical payment benefits which were due under the group policy issued by Kennesaw to the City of Gadsden and Dewey M. Smith, husband of the plaintiff who is the named beneficiary.

It is the contention of appellant that because the appellant's husband was suffering a physical disability at the time of the termination of the group policy that the said policy could not be canceled by action of the appellee and the City of Gadsden where the insured employee did not consent.

To sustain her in this connection, appellant cites Shears v. All States Life Insurance Company, 242 Ala. 249, 5 So.2d 808. It should be noted that in the *Shears* case, supra, the plaintiff (insured) was wholly disabled by bodily injury or disease, and the court there held that a jury case was made out based upon this contention,

and that the policy could not be canceled as to the insured under these conditions. But here, we have an entirely different situation. The last paragraph in the stipulation of facts states "That Kennesaw Life and Accident Insurance Company has heretofore paid any and all disability benefits and medical payment benefits which were due under the group policy issued * * *." We assume that following the disability beginning on March 22, 1965, the plaintiff (deceased) made claim for benefits. The contract, Section 5(c), provides for a maximum period of 13 weeks. Under the stipulation, the defendant was in no way indebted nor was there any pending claim at the time of termination of the contract on August 31, 1965. In addition to this, however, notice of the proposed change from one company to another was embodied in the Certificate for the Trustee Life Insurance Company. The concluding paragraph in said Certificate states: "This Certificate, * * * *replaces and makes void any and all certificates that previously may have been issued to the Employee under a Group Policy (ies) issued by the Insurance Company.*" (Emphasis supplied.)

We hold, therefore, that there was no extended insurance by virtue of any existing disability and that insofar as this contention is concerned, there was a legal termination by the defendant of its relationship with the City of Gadsden and with the plaintiff's deceased husband.

We consider now the contention of appellant that because of the inclusion of an extended death benefit clause the policy, insofar as the life provision coverage is concerned, was continued in effect after the date of termination of the policy, namely, August 31, 1965. Section 6 of the policy states:

"SECTION 6.  TERMINATION OF INSURANCE

"The insurance of an employee shall automatically terminate:

"(1) on the date of termination of employment, or transfer to a class not eligible for insurance, or

"(2) on the date such employee has failed to make a required contribution towards the cost of his insurance, or

"(3) on the date of termination of this Policy whichever date is the earliest, except that

"(a) if an employee ceases work due to illness or injury, or if work continues on a part-time basis because of such disability, his insurance may be continued until terminated by the Group Policyholder, or

"(b) if the employee ceases full-time work due to lay-off, leave of absence or suspension of business operations such insurance may be continued by payment of premiums in respect of such employee.

"In no event shall such insurance continue as in sub-paragraph (a) and (b) above for more than six months after the employee ceases to be actively employed."

█ In brief, appellant relies on the third provision of Sections (a) and (b). It should be noted, however, that this Section contains the following: "such insurance may be continued by *payment of premiums in respect of such employee*." (Emphasis added.) A concluding paragraph limits the continuation of the insurance under the circumstances named for not more than six months. However, this time limitation would not come into effect until such insurance had been continued in force by payment of premiums. The agreed statement of facts shows that no payment of premiums was made after the date of the termination of the policy. Furthermore, the agreed statement of facts shows that the company paid for and deceased employee contributed to the payments which were made on the new policy put into effect on September 1, 1965.

█ The next Section which we consider is as follows:

"SECTION 7. EXTENDED DEATH BENEFIT

"If an employee dies within thirty-one days after the termination of his insurance and prior to the effective date of any individual policy applied for under Section 8, the Company will pay the amount of insurance, if any, such employee was entitled to convert upon receipt of due proof of death whether or not the application for the individual policy or payment of the first premium therefor has been made."

Appellant contends that the wording of this section was such that the life insurance coverage on the group policy was in effect because of the specific language relating to the death of an employee within 31 days after the termination of his coverage. This section clearly refers to the conversion privilege set out in Section 8 that follows, and is qualified by termination of employment which in this case never occurred. That section divides the conversion privilege into two types. The first of them, which applies to situations in which the employment of an individual in an insurable class terminates, is inapplicable to the conditions obtaining in this case. The second type of conversion privilege, upon which appellant evidently relies, requires as a condition for conversion that an employee must have been insured for at least five years prior to termination date. It is manifestly impossible that appellant's decedent could have met the requirement of being insured for five years preceding the termination of the policy.

Under the facts as stipulated, it is our conclusion that no money is owed by the appellee to appellant under Sections 7 and 8 of Exhibit "B." The plain language of the instruments makes this clear, both in the Certificate and in the Group Policy. In Chemstrand Corp. v. Maryland Casualty Co., 266 Ala. 626 (13–15), 98 So.2d 1, this Court held:

"* * * Provisions in policies of insurance which clearly disclose the par-

ties' real intent are not to be given a strained construction to raise doubts where none reasonably exist. McDowell v. United States Fidelity & Guaranty Co., 260 Ala. 412, 71 So.2d 64; Aetna Casualty & Surety Co. v. Chapman, 240 Ala. 599, 200 So. 425. And if the contract of insurance in its terms is plain, certain, and free from ambiguity, there is no room for construction, and it is the duty of the court to enforce it as written. Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7. * * *"

Finally, appellant invokes the aid of the wording of the contract leading up to the issuance of the policy, to show at least an ambiguity as to the conditions under which the conversion privilege could be exercised and to what extent. (Exhibit "A," Page XIII, Conversion Privileges, Section 8) Assuming that a favorable construction and interpretation of the policy with the contract would have entitled appellant's deceased husband to exercise any right as a retiree, there is a complete failure of proof that at any time he had the status of a retiree, or that at any time any effort was made to convert any rights that he had thereunder. On the contrary, it is shown under the stipulation that he continued the payments of the premiums only to the date of termination, and thereafter no premiums were made to Kennesaw by appellant, or by his employer on his behalf.

▇▇ Appellant cites the provision in the policy (Section 14 of Exhibit "B," XXII) stating the benefits accorded those who become disabled before attaining age 60. Here, there is a provision to continue the insurance in force without payment of premiums during the disability period, but in no event longer than one year from the termination of premium payments for such employee. It should be noted that appellant at no time has contended that appellant's deceased husband was entitled to have this insurance in force under this Section. As we understand it, this Section

is cited here to show that there is a conflict or ambiguity with other provisions of the contract and especially with the provisions of Section 6, supra. We fully realize that where an insurance contract is susceptible of two constructions, that will be adopted which is most favorable to the insured. All States Life Insurance Co. v. Kelso, 29 Ala.App. 310, 195 So. 460, and as stated in Metropolitan Life Insurance Co. v. Korneghy, 37 Ala.App. 497, 71 So.2d 292, 68 A.L.R.2d 239:

"It is our task to give effect to all parts of the contract and to give a reasonable interpretation to all of its provisions. We must strive to determine the intention of the parties which is the polestar of all rules of construction. We are certainly not privileged to make a new or different contract from that which was intended."

▇▇ All group contracts of insurance include a primary contractual relation between the insurance company and the group policyholder. It is upon this relationship that the policyholder's rights are dependent. As was stated in North River Insurance Co. v. Jackson, 278 Ala. 604, 179 So.2d 731:

"It is, of course, our duty to resolve any ambiguities in an insurance policy in favor of the insured * * *; however, an isolated sentence of the policy should not be construed alone, but in connection with other provisions of the said policy in order to arrive at a construction reasonably calculated to accomplish the intent and purpose of the parties. * * *"

A careful consideration of the record, along with briefs submitted, convinces us that the trial court reached a proper decision in this case, and the judgment is therefore affirmed.

Affirmed.

LAWSON, MERRILL and HARWOOD, JJ., concur.