318 So.2d 253

**In re Woddie E. HARRISON, Plaintiff-Appellee,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant.**

**CER. I.**

Supreme Court of Alabama.

Aug. 28, 1975.

Balch, Bingham, Baker, Hawthorne, Williams & Ward and C. William Gladden, Jr., Birmingham, for defendant-appellant.

Robert M. Hill, Jr., Florence, for plaintiff-appellee.

SHORES, Justice.

The Honorable John R. Brown, Chief Judge of the United States Court of Appeals, Fifth Circuit, recently remarked that *Barnes v. Atlantic & Pacific Ins. Co. of America,* 514 F.2d 704 (5 Cir. 1975), was an historic case, ". . . not because of the intrinsic difficulty of the issues, but because this is our first *published* opinion utilizing the certification provisions recently adopted by the citizens of Alabama." (Emphasis Supplied)

This, too, is an historic case, since it is the first case from this court answering questions certified to us under the provisions of the new Judicial Article, Art. VI, § 140(b)(3).

Justice Brandeis, writing one of his last opinions, said in *Erie Railroad Co. v.*

*Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938):

". . . Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state. . . ."

 That doctrine requires a federal court, in a case based upon diversity of citizenship between the litigants, to apply the law of the state wherein it sits. Since each state is sovereign under our system of government, this court is the final authority on Alabama law. While the federal courts are considered the primary experts on National law, the state courts are the final expositors of the law of their respective jurisdictions. The burden placed on the federal courts by *Erie* is frequently a heavy one, particularly where the law of the state is unclear or has not been expressed. On occasions, those courts are put in the awkward position of having the state courts "overrule" them by subsequently deciding a question contrary to the conclusion reached by the federal court.

In recognition of this problem and in an effort to ameliorate it, this court adopted, pursuant to Art. VI, § 140(b)(3), Constitution, ARAP 18(a), which provides:

"When it shall appear to a court of the United States that there are involved in any proceeding before it questions or propositions of law of this State which are determinative of said cause and that there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal court may certify such questions or propositions of law of this State to the Supreme Court of Alabama for instructions concerning such questions or propositions of state law, which certified question the Supreme Court of this State, by written opinion, may answer."

We are confident that this procedure will be utilized by the Federal Bench for the purpose for which it is intended—to allow the federal court to obtain authorita-tive answers *to difficult questions of Alabama law.* In the words of Professor Philip B. Kurland, reproduced in 24 F.R.D. 481, 490, perhaps the process can serve as a ". . . demonstration of cooperative judicial federalism which would justify those of us who think that the federal form of government has a contribution to make toward the preservation of justice in this country."

When properly utilized, we think this intersovereign certification procedure can have that effect.

The following was certified to us on March 17, 1975:

"CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF ALABAMA, PURSUANT TO ARTICLE 6, § 140(b)(3) OF THE ALABAMA STATE CONSTITUTION, AS AMENDED 1973

"To The Supreme Court of Alabama and the Honorable Justices thereof:

"It appears to the United States Court of Appeals for the Fifth Circuit that this case involves questions or propositions of the law of the State of Alabama which are determinative of the cause, and there appear to be no clear controlling precedents in the decisions of the Supreme Court of Alabama. This court hereby certifies the following questions of law to the Supreme Court of Alabama for instructions concerning the same, based on the facts recited herein, pursuant to Article 6, § 140(b)(3) of the Alabama State Constitution, as amended 1973, as follows:

"1. *Style of the case.*

"The style of the case is Woddie E. Harrison, Appellee, v. Insurance Company of North America, Appellant, being case No. 73-3161, United States Court of Appeals for the Fifth Circuit, an appeal from the United States District Court for the Northern District of Alabama.

"2. *Statement of the case.*

"On December 21, 1972, Woddie E. Harrison, the appellee, filed his complaint against Insurance Company of North America ['INA'], the appellant, alleging that INA on October 1, 1965, insured plaintiff against loss resulting from bodily injuries caused by accident; that said insurance provided that one year after continuous total disability, INA will pay permanent total disability benefits of $50,000; and that on August 13, 1969, plaintiff suffered an accidental injury which caused permanent and total disability.

"On February 21, 1973, defendant filed its answer alleging that the policy of insurance alluded to in the original complaint, dated October 1, 1965, had been duly executed by the Tennessee Valley Authority ['TVA'] (Harrison's employer) and INA as a group disability policy; that the policy of insurance sued on was renegotiated and replaced by a subsequent policy on October 1, 1966; that the 1966 policy was the only contract in force and effect; that the 1966 policy differed from the previous policy in that the 1966 policy excluded disability benefits for injuries for which benefits are payable under the Federal Employees' Compensation Act ['FECA']; that plaintiff is receiving disability benefits under FECA (this was later stipulated); and that plaintiff has not suffered a permanent total disability.

"Defendant's motion for summary judgment was denied on April 2, 1973. Thereafter on April 18, 1973, a trial on the merits commenced. At the conclusion of all the evidence the trial judge ruled as a matter of law that Alabama law applied to determine the rights and liabilities of the parties; that notice of the changed policy admittedly received by TVA did not constitute notice to Harrison; and that TVA was not the agent of Harrison for the purpose of receiving notice of the changed policy. The court submitted to the jury for determination the issues as to whether Harrison had notice of the changed policy and whether Harrison had suffered permanent total disability. In answer to five special interrogatories, the jury on August 20, 1973, returned its special verdict, in part, as follows: (1) plaintiff did not, prior to the accidental injury of August 13, 1969, receive a copy of the 1966 Certificate of Insurance or otherwise have notice of the change in insurance coverage, (2) INA did not take action reasonably calculated to provide insured employees with a copy of the new Certificate of Insurance or with other notice of the change in insurance coverage, and (3) as of August 13, 1970, plaintiff was completely unable as a result of said accidental injuries to perform his occupation as a machinist or to engage in any occupation or employment for which he was fitted by reason of education, training or experience.

"On April 26, 1973, the District Court entered its Opinion and Judgment based on the jury's special verdict and the applicable law, holding that the plaintiff recover of INA the sum of $50,000, together with interest and costs.

"Motion for Judgment Notwithstanding the Verdict and for New Trial was filed on May 4, 1973, and overruled on June 28, 1973.

"Notice of Appeal to the United States Court of Appeals for the Fifth Circuit was filed on June 28, 1973.

"A. *Choice of law*

"Harrison is and has been a resident and citizen of the State of Alabama, and INA is a corporation incorporated under the laws of the State of Pennsylvania. TVA's home office is in Knoxville, Tennessee. The 1960 accident policy was executed by INA through its Vice-President and Assistant Secretary in the city of Philadelphia, Pennsylvania, and countersigned by an authorized representative of INA, in Knoxville, Tennessee. (See Exhibit S-1, page 514 of Appendix.) The 1966 policy of insurance was executed by INA through its Vice-President and Assistant Secretary

in the city of Philadelphia, Pennsylvania, but was not countersigned. (See page 523 of Appendix.)

"INA originally contracted with TVA to afford coverage to TVA employees in 1960. The evidence showed that coverage was afforded for eligible employees of TVA. TVA employees paid premiums to TVA through a payroll deduction system, and TVA forwarded the monies to INA in a lump sum.

"Harrison, as well as other insured employees, applied for insurance coverage at TVA's Muscle Shoals plant in Alabama. Harrison received a Certificate of Insurance in October 1965. The Certificate was handed to him on the job by one of the office personnel of TVA.

"Plaintiff was injured on August 13, 1969, while employed with TVA at the Wilson Dam Hydro plant in Muscle Shoals, Alabama. Harrison testified that the 1966 Certificate was received by him through the mail from TVA's office six or seven months after he was hurt.

"The policies of insurance obtained by TVA provided:

"Conformity with State Statutes: Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such statutes.

"Legal Actions: . . . No such action shall be brought after the expiration of three years (or the minimum time, if more than three years, permitted by the law in the State where the insured resides) . . .

"B. *Notice to Harrison*

"The original INA group master policy, Accident Policy SGA–420 covering insured TVA employees, was awarded by TVA to INA, under competitive bid, effective October 1, 1960. In 1963 this policy was renewed for a three-year period.

"On September 7, 1965, Harrison made application for said accident insurance in the principal sum of $50,000. INA issued Harrison a Certificate of Insurance, delivered to plaintiff by one of the office personnel of TVA and effective October 1, 1965.

"The original group master policy remained in effect without change in coverage until 1966, and included coverage for injuries for which benefits under the Federal Employees' Compensation Act were payable. In 1966 changes were negotiated, without competitive bid, between INA and TVA, whereby benefits under the original group policy would be denied for accidents occurring on the job and covered by the Federal Employees' Compensation Act. This new contract was made effective October 1, 1965.

"The insurance premium paid by the insured employees remained the same under the original policy and the 1966 policy.

"New Certificates of Insurance under the 1966 policy were printed on July 14, 1966, in INA's offices in Philadelphia, Pennsylvania, and mailed in bulk to INA's offices in Nashville, Tennessee, then mailed from Nashville to TVA's offices in Knoxville, Tennessee. INA mailed a sufficient number of certificates for distribution to all covered employees. INA kept no further records of the new Certificates after mailing same to TVA in Knoxville. No records were kept relating to the delivery of Certificates to TVA employees. There was no policy of surrendering an old Certificate if a new Certificate was issued. There was no record, or knowledge, of anyone having delivered the 1966 Certificate of Insurance to plaintiff Harrison.

"Harrison did not receive any notice of a change in the coverage of his 1965 Certificate until after his employment-connected accident. Some six or seven months subsequent to said accident he received the new INA Certificate of Insurance from TVA through the U.S. Mail.

"3. *Questions to be certified.*

"1. Under the Alabama law of conflict of laws, is the law to be applied to the insurance covering Harrison that of Alabama, Tennessee or Pennsylvania?

"2. If Alabama law applies, is the 1966 insurance contract effective as to the insured employee, Harrison, who received no notice of the new contract and its provisions, there being notice to the policyholder-employer, TVA?

"The entire record in this case, together with copies of the briefs of the parties and certification in this court, are transmitted herewith."

## QUESTION NO. 1.

■ Both Harrison and INA agree that the general conflict of laws rule provides that the law of the state wherein the contract was executed is determinative of the rights and liabilities of the parties to the contract. This is correct. *Furst & Thomas v. Sandlin,* 208 Ala. 490, 94 So. 740 (1922). However, the precise question as to what law governs with respect to group insurance has not been specifically answered in Alabama. In 43 Am.Jur.2d, Insurance, § 39, the following appears:

"From the circumstance that group insurance involves a triangular contractual relationship among the insurer, the employer, and the insured employee, distinctive questions of conflict of laws arise in respect thereof. On the question whether the rights of an insured employee under a group policy are governed by the law of the state where the master policy is issued and delivered or by the law of the state where the certificate is issued and delivered to the employee, there is a conflict of authority. . . ."

■ We hold that, under the facts of this case, the law of Alabama applies. Not only was the certificate issued and delivered to the employee in Alabama, but additionally, after INA issued the original group master policy and agreed to insure "eligible persons," "employees of TVA," Harrison completed an application for accident insurance in the principal amount of $50,000 on himself and $10,000 on his wife. The form which he signed, in Alabama, is entitled "APPLICATION FOR ACCIDENT INSURANCE AND PAYROLL DEDUCTION AUTHORIZATION." The body of the certificate of insurance issued pursuant to such application and delivered to Harrison in Alabama carries this language:

"THE COMPANY HEREBY CERTIFIES that the employee and eligible dependents, if any, listed on the above application . . . are insured under . . . [the master policy]."

INA asserts that the document executed by Harrison in securing coverage and authorizing payroll deductions was not an "'application' in the legal sense of the word," but rather a mere signing up for automatic coverage, and that contract of insurance was the master policy and "the certificate is practically insignificant."

This argument loses its force, however, when it is recognized that one must look to the certificate, and not the master policy, to determine the amount of coverage afforded. INA offered, for a given sum, to insure TVA employees who made application for such coverage and authorized payroll deductions for the payment of the premium. Harrison accepted that offer in Alabama; therefore, the contract was made in Alabama, *Ingalls Steel Products Co. v. Foster & Creighton Co.,* 226 Ala. 122, 145 So. 464 (1932), and is governed by Alabama law.

In addition, Title 28, § 10, Code of Alabama 1940, provides:

"All contracts of insurance, the application for which is taken within the state, shall be deemed to have been made within this state, and subject to the laws thereof.";

and the policy itself proclaims:

". . . Any provision of this policy which, on its effective date, is in conflict

with the statutes of the state in which the Insured resides on such date is hereby amended to conform to the minimum insurance requirements of such statutes."

Both our cases and statute dictate the application of the law of Alabama.

## QUESTION NO. 2.

Having concluded that Alabama law applies, we next turn to the second question, i. e., is the 1966 insurance contract effective as to the insured employee, Harrison, who received no notice of the new contract and its provisions, there being notice to TVA, his employer.

Stated differently, the question is whether notice of the cancellation or termination of the 1965 policy and the issuance of a new one in 1966 was required to be given the insured and if so, was notice to his employer, TVA, sufficient.

Alabama law on this subject is unclear, which, of course, explains why the question was certified to this court by the United States Fifth Circuit Court of Appeals.

In *Shears v. All State Life Ins. Co.,* 242 Ala. 249, 254, 5 So.2d 808, 812 (1942), this court held:

"The policy may be allowed to lapse by non-payment of premiums by the employer, or the insurer may cancel it for that reason, or it may terminate upon the expiration of its term without action on the part of anyone, or upon the termination of the employee's employment, because the contract so provides. Undoubtedly, where the employee contributes to the premium payment, he should have something to say regarding the cancellation; at least where the cancellation is by the affirmative action of either the insurer or the employer, or both. Under such circumstances, he has more than the interest of a third party beneficiary. He has an interest obtained through an expenditure of his own money. He must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled without his consent."

*Poch v. Equitable Life Assur. Society,* 343 Pa. 119, 22 A.2d 590, was relied on in *Shears,* and the following statement from the Supreme Court of Pennsylvania was approved:

" . . . 'Upon a review of the authorities, and upon reason as well, our conclusion is that, under a group policy like that now before us [and in all material respects like the one involved here], the insured employee must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled or any of its effective provisions eliminated by either the employer or insurer, except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere: further, that in the absence of notice, an agreement of cancellation or modification like that here entered into between the Association [employer] and the Society [insurer] is, as to such employee, legally ineffective to relieve the insurance company from liability under the original policy.' " (242 Ala. at 254, 5 So.2d at 812)

*Shears* was closely examined by the Court of Appeals in *Metropolitan Life Ins. Co. v. Korneghy,* 37 Ala.App. 497, 71 So.2d 292 (1954). In *Korneghy,* the insured employee received written notice of the termination of the group coverage, but contended that it could not be terminated without his consent. The Court of Appeals held that a group policy could be terminated without the consent of the insured but said:

"Our diligent study of the authorities leads us to the conclusion that a majori-

ty of the appellate courts of the country hold to the view that, under factual circumstances analogous to those in the case at bar, timely notice should be given the insured of any amendments to or cancellation of the master group policy.

"While we are not called upon at this time to declare that we adopt this rule, we are frank to state that it certainly seems to be more in accord with fair treatment of the insured employee." (37 Ala.App. at 506, 71 So.2d at 301)

This court, in *Hill v. Metropolitan Life Ins. Co.,* 266 Ala. 285, 96 So.2d 185 (1957), held that the Court of Appeals correctly construed *Shears* on the issue of consent of an insured to the cancellation of a group policy.

*Meyerson v. New Idea Hosiery Co.,* 217 Ala. 153, 115 So. 94 (1927), has frequently been cited as contra to *Shears* and *Korneghy*. See 68 A.L.R.2d at 249.

Although admittedly confusing, *Meyerson* is readily distinguishable from *Shears* and *Korneghy*. In *Meyerson,* the employer, New Idea, bought group life insurance on its employees and notified them that it had done so. They were given the right to acquire additional coverage if as many as 75% of them agreed. More than 75% did agree, including Meyerson, and authorized payroll deductions for payment of the premiums on this additional coverage. New Idea allowed the coverage to lapse without giving notice to its employees. Meyerson subsequently died and his widow beneficiary sued New Idea for breach of contract, contending that New Idea had a contractual obligation to continue to pay the premiums and thereby to retain coverage. The court held that she had failed to prove one of the essential elements of her contract count, i. e., that there was no proof that the undertaking to deduct the premiums and pay the insurer was other than a gratuitous undertaking by the employer, or stated differently, there was no proof that the employer received any consideration for this undertaking and, therefore, a failure

of proof of one of the essential elements of the contract count.

The widow also sued New Idea for negligence in allowing the insurance to lapse without first giving notice to the plaintiff (beneficiary) or her husband. The trial court sustained demurrers to the negligence count. In affirming, this court said:

"It is a familiar principle of the law of agency that, when one party intrusts the transaction of a matter of business to another who enters upon the execution of his agency, though the undertaking is gratuitous, and does it amiss through want of due care, and as a proximate consequence of such negligence damage ensues to the principal, the agent is liable to the principal in an action on the case as for such misfeasance. [Citations Omitted].

"And a gratuitous agent who undertakes and enters upon the business of his principal is liable to the third person for affirmative acts of negligence proximately resulting in personal injury or property damage to such third person. Liability of the latter class rests upon a breach of duty to such third person arising out of the performance of the work, and exists, not because of the agency, but regardless of it. [Citations Omitted].

". . . The fault in appellant's [widow's] contention here is that these counts are lacking in averments showing that the defendant was plaintiff's [beneficiary] agent to keep the insurance, or any part of it in force, and the negligence complained of is the failure to give notice before allowing the insurance to lapse so that the insured might protect his interest in procuring other insurance. *It may be conceded that,* under the circumstances presented by these counts, in view of its undertaking to pay the insurance out of the insured's compensation, *the law imposed on the defendant the duty to notify the insured before allowing his insurance to lapse,* and that the

failure to give such notice was negligence that would afford a cause of action to its principal—the insured—but for such negligence it was not liable to the plaintiff [beneficiary]. [Citation Omitted] " (Emphasis Supplied) (217 Ala. at 157, 115 So. at 97)

Thus, as we read *Meyerson,* it stands only for the proposition that in that case the beneficiary was unable to prove her contract count, in that there was no proof that the employer, in forwarding the premiums to the insurer, was acting other than gratuitously. Her negligence counts were defective in that the employer owed her no duty as a beneficiary to notify her that the policy had lapsed.

That is not the question in this case. The question here is whether the insurer has that duty and, if so, is it discharged by notice to the employer. We hold that the insurer does have that duty under *Shears,* and that notice to the employer is not sufficient.

Under the facts of this case, and we note that each case must depend upon its own facts, we think TVA was the agent of INA in so far as the notice issue is concerned. In *All States Life Ins. Co. v. Tillman,* 226 Ala. 245, 146 So. 393 (1933), on the agency question in a group insurance case, this court said:

"It is quite well settled by our decisions that the payment by the employee of his monthly premium through a deduction from his monthly salary by his employer, who, by prearrangement, is to retain the same, and make payment of monthly premiums on the group policy, *is payment to the insurer so far as such employee is concerned.*

"The entire plan of insurance enables the insurer to do business with one party in this regard, and provision is made in the policy . . . by which the employer and the insured shall keep check of the employees who are insured from time to time, and of the payment of their premiums. The insurer issues no receipt

to the insured employee for premium paid; he is provided with no means of knowledge as to the business operations between the employer and insurer; and, having fully performed by continuing in the employment, and paying his contribution to the premium in the manner devised in this scheme of insurance, he must be considered of the group covered by the policy. [Citations Omitted]." (Emphasis supplied) (226 Ala. at 247, 146 So. at 393)

The answer to Question No. 2, as certified, is No. The 1966 insurance contract is not effective as to Harrison who received no notice of the new contract.

All the Justices concur.